<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT** | : | **Civil Action No.: 10-3095 (PGS)** |
| **OPPORTUNITY COMMISSION,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **MEMORANDUM OPINION** |
| | : | **AND ORDER** |
| **FAPS, INC., et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

<u>ARPERT, U.S.M.J.</u>

I.     INTRODUCTION

This matter comes before the Court on a Motion by Defendant Foreign Auto Preparation

Service, Inc. ("Defendant" or "FAPS") to compel the Equal Employment Opportunity

Commission ("Plaintiff" or "EEOC") to produce the statistical data responsive to FAPS'

discovery requests or, in the alternative, for an *in camera* review [dkt. entry. no. 54].  EEOC has

opposed this Motion.  *See* dkt. entry no. 58.

This matter also comes before the Court on a Motion by EEOC to compel FAPS to

provide discovery for the period January 1, 2000 to December 31, 2003 [dkt. entry. no. 55].

FAPS has opposed this Motion.  *See* dkt. entry no. 57.

The Court conducted oral argument with respect to both Motions on January 19, 2012.

After oral argument, the Parties agreed to engage in mediation efforts and the Court reserved

ruling on the Motions.  *See* dkt. entry no. 63.  During a telephone status conference on April 16,

2012, counsel advised the Court that the parties' mediation efforts were unsuccessful and a

Scheduling Order directing the conclusion of discovery was entered. *See* dkt. entry no. 68. For the reasons stated on the record and herein, FAPS' Motion is **DENIED** and EEOC's Motion is **DENIED**.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On November 1, 2007, EEOC issued a Notice of Charge of Discrimination ("Notice of Charge") against FAPS based upon alleged violations of Title VII of the Civil Rights Act of 1964 including, but not limited to, "unlawfully discriminating against Black and female applicants and employees based on their race and sex" by "refusing and failing to recruit, select, and hire Blacks and women in laborer, operative, craft worker, and service worker positions" from "at least January 1, 2004 to the present". *See* Cert. of Avis Bishop-Thompson, Esq., dkt. entry no. 57-2 ("Cert. 2 Bishop-Thompson") at Ex. A. Thereafter, EEOC conducted a two-year investigation into the alleged violations, requesting information and documents from FAPS which covered the period January 1, 2002 to the present. *Id*. at Exhs. B & D. FAPS maintains that it "cooperated with...EEOC's various requests and provided a multitude of documents". *Id*.; *see also id*. at Exhs. C & E.

On August 11, 2009, EEOC issued a Determination stating that its investigation had "established a violation of Title VII on the basis of race (black) and sex (female)" and that FAPS had "adopted and perpetuated company-wide recruitment practices that failed to reach qualified blacks and females in the respective labor markets" and instead "relied upon its overwhelmingly white and Hispanic male employees to refer candidates". *Id*. at Ex. F.

On June 17, 2010, EEOC initiated this action against FAPS "under Title VII of the Civil Rights Act of 1964 ("Title VII"), Title I of the Americans with Disabilities Act of 1990

("ADA"), and Title I of the Civil Rights Act of 1991 ("Title I") to correct unlawful employment practices on the basis of race and disability...and [to] provide appropriate relief to a class of potential and actual applicants who were adversely affected by such practices". *See* EEOC's Comp., dkt. entry no. 1 at 1.  Specifically, EEOC alleges that FAPS "has engaged in an ongoing pattern or practice of race discrimination against African Americans in recruitment and hiring...in violation of Title VII" and "violated the ADA by making improper pre-employment disability-related inquiries of applicants". *Id*.  More specifically, "[s]ince at least 2004", EEOC alleges that FAPS has violated "Sections 703(a) and (k) of Title VII, 42 U.S.C. §§ 2000e, 2000e-2(a) and 2000e-2(k)", by "failing or refusing to hire a class of African American job applicants and prospective job applications because of their race" – as set forth more fully in EEOC's Complaint – "resulting in a disparate impact for African Americans". *Id*. at 3-5; *see also id*. at ¶¶ 9-10.  Of particular note is EEOC's allegation that "[FAPS], before 2004 and continuing thereafter, has had, and continues to have, a statistically significant smaller percentage of African American employees in entry level positions than would be expected given the relevant labor market in the area where [FAPS] is located". *Id*. at ¶ 9(b).  Morever, EEOC maintains that "[FAPS'] almost exclusive reliance on word-of-mouth recruiting", and "falsely [telling] African American applicants that no jobs were available when...in fact...[FAPS] was hiring non blacks", "has resulted in its failure or refusal to hire African Americans, has deterred African Americans from applying for jobs, and has perpetuated and preserved an almost all-white workforce in a geographic area heavily populated by non whites". *See* EEOC's Br., dkt. entry no. 55-1 at 1.  FAPS has filed an Answer in which it denies EEOC's allegations. *See* FAPS' Ans., dkt. entry no. 31.

3

A.      **FAPS' Motion**

On March 10, 2011, FAPS served Interrogatories wherein it "requested that...EEOC identify and provide a description of all documents, statistics and demographic data that...EEOC had at the time it filed the Complaint which supports the claim...that FAPS'...policies have a disparate impact on African American and other minority applicants or prospective applicants". *See* FAPS' Br., dkt entry no. 54-1 at 3; *see also* Cert. of Bishop-Thompson, dkt. entry no. 54-2 ("Cert. 1 Bishop-Thompson") at Ex. B, Interrogatory No. 21.  Contemporaneously, FAPS served a Notice to Produce Documents on EEOC requesting, among other things, the following:

> 1.   To the extent not otherwise produced, any and all written reports, statements or other documents prepared by you related to the alleged discriminatory hiring and recruitment practices alleged in your Complaint.
> ...
> 7.   All documents, statistics and/or demographic data used by the EEOC to determine and analyze the relevant labor pool from 2004 to the present for African American and other minority applicants and prospective applicants.
> ...
> 12.   All communications, documents or studies prepared by an expert or consultant, reviewed by or relied on by the EEOC, regardless of whether such communications will be used at trial and regardless of whether such communications, documents or studies were prepared at the direction of the EEOC, addressing the hiring and/or recruitment practices of FAPS.
> ...
> 18.     To the extent not otherwise produced, all documents describing, relating or referring to the statistical analysis of FAPS' hiring and employment practices.

*Id.*; *see also* Cert. 1 Bishop-Thompson at Ex. D.

On April 15, 2011, EEOC objected to FAPS' Interrogatory No. 21 "on grounds and to the extent that it seeks documents and information which are protected from disclosure by the

attorney-client privilege, the attorney work-product privilege, the common interest and the government deliberative process privilege and which are otherwise non-discoverable". *See* Cert. 1 Bishop-Thompson at Ex. C. Similarly, on April 15, 2011, EEOC objected to FAPS' Document Requests as follows:

> 1.  In addition to the general objections, EEOC objects to this document request on the grounds and to the extent that it seeks documents subject to the attorney-client privilege, work-product privilege, the common interest and/or joint prosecution privilege and the government deliberative process privilege. To the extent that this document request seeks non-privileged documents from the administrative investigation, EEOC refers [FAPS] to the previously produced relevant, non-privileged portions of the investigative file bates-stamped EEOC000001-0002426 as well as the supplemental documents provided herein bates-stamped EEOC0002427-00526.
> ...
> 7.  In addition to the general objections, EEOC objects to this document request on the grounds and to the extent that it seeks documents subject to the attorney-client privilege, the attorney work-product privilege, the common interest and/or joint prosecution privilege and the government deliberative process privilege. To the extent that this document request seeks non-privileged documents from the administrative investigation, EEOC refers [FAPS] to the previously produced relevant, non-privileged portions of the investigative file bates-stamped EEOC000001-0002426.
> ...
> 12.  In addition to the general objections, EEOC objects to this document request on the grounds and to the extent that it seeks documents subject to the attorney-client privilege, the attorney work-product privilege, the common interest and/or joint prosecution privilege and the government deliberative process privilege and on the further grounds and to the extent that it seeks non-discoverable information pursuant to FED. R. CIV. P. 26(b)(4)(B). Without waiving and subject to said objection EEOC states that it has not yet retained a trial expert but that intends to do so.
> ...
> 18.  In addition to the general objections, EEOC objects to this

document request on the grounds and to the extent that it seeks documents subject to the attorney-client privilege, the attorney work-product privilege, the common interest and/or joint prosecution privilege and the government deliberative process privilege. EEOC objects to this request on the further grounds that it seeks information which is not discoverable under FED. R. CIV. P. 26(b)(4)(B). Without waiving and subject to said objection EEOC states that it has not yet retained a trial expert but that [it] intends to do so.

*Id.* at Ex. E. EEOC's responses were accompanied by a privilege log identifying the following items as privileged pursuant to the government deliberative process privilege and the attorney work-product privilege: "1) RTI Labor Market Analysis; and (12) Statistical Analysis: Reports, Data and Research". *See* FAPS' Br., dkt. entry no. 54-1 at 4.

After receiving deficiency letters dated May 10 and May 20, 2011 from FAPS (*see* Cert. 1 Bishop-Thompson at Exhs. F & G), on May 24, 2011 EEOC reasserted the "government deliberative process" and/or "attorney-work product" privileges with respect to privilege log items 1 (RTI Labor Market Analysis & Supporting Data), 7 (Intake Screening Processing Notes Form), and 12 (Statistical Analysis: Reports, Data & Research) in EEOC's privilege log (*Id.* at Ex. H) and amended its discovery responses on June 7, 2011 (*Id.* at Exhs. I & J). Specifically, EEOC maintains that "the requested documents have been properly withheld under the government deliberative process privilege and, where applicable, the attorney work-product privilege" because they "are, by definition, pre-decisional and deliberative" given that they include "data and information about employers other than...FAPS...[which] was used by EEOC before EEOC filed a Commissioner's Charge against FAPS...and before EEOC commenced its investigation against FAPS". *See* EEOC's Opp'n Br., dkt. entry no. 58-1 at 1-2. EEOC contends that "preliminary analyses of hiring practices at Port Newark, including on bases and about

employers not implicated in this lawsuit, are irrelevant to EEOC's ultimate proof in this litigation" given that "[FAPS] will discover EEOC's statistical proof during...expert discovery" and that "parties are not entitled to a consulting expert's analysis or data". *Id*. Oppositely, FAPS maintains that EEOC's position "seriously impedes FAPS' ability to obtain statistical data regarding the relevant labor market as defined by...EEOC and...[FAPS' ability to prepare] an adequate defense". *See* FAPS' Br., dkt. entry no. 54-1 at 1. FAPS claims that withholding the requested discovery until the parties are required to exchange expert discovery "would prevent FAPS from analyzing the completeness and reliability of the statistical data and analysis of the relevant labor market for the challenged employment practices". *Id*. at 1-2.

### B.      EEOC's Motion

On March 9, 2011, EEOC served Interrogatories and Document Requests on FAPS that seek information "from the period of 2000 through the present". *See* EEOC's Br., dkt. entry no. 55-1 at 1; *see also* Cert. of Rosemary DiSavino, dkt. entry no. 55-2 ("Cert. 1 DiSavino") at Ex. A. FAPS served its responses to EEOC's Interrogatories and Document Requests in April 2011 by providing responses and identifying "documents which had been previously produced and incorporat[ing]...by reference", by indicating that it "would produce" any additional documents "should they be discovered", and by making "general and specific objections to the temporal scope of discovery". *See* FAPS' Opp'n Br., dkt. entry no. 57 at 4-5; *see also* Cert. 1 DiSavino at Ex. B. After receiving a deficiency letter from EEOC dated May 18, 2011 (*see* Cert. 1 DiSavino at Exhs. C-D), FAPS amended its discovery responses on July 18, 2011 but "continued to object to the scope of discovery from 2000 to 2003 as beyond the scope of the triggering date" (FAPS' Opp'n Br., dkt. entry no. 57 at 5; *see also* Cert. 1 DiSavino at Ex. E; Cert. 2 Bishop-Thompson at

Ex. G).

Specifically, FAPS maintains that discovery for the period from 2000 to 2003 is "unduly burdensome, overly broad and beyond the scope of the trigger date of 2004 as set forth in the Notice of Charge...and...Complaint".  *See* FAPS' Opp'n Br., dkt. entry no. 57 at 1-2.  FAPS notes that "[d]uring the investigation, ...EEOC [only] requested information and documents from FAPS which covered the period from January 2002 through December 2010" and at that time "FAPS notified...EEOC that it was not in possession of applications, recruitment and hiring data encompassing the period from 2000 to 2003".  *Id*. at 1-2.  FAPS reiterates that "[t]he information and documents for the period from 2000 to 2002 cannot be located", that "[t]he temporal scope of discovery should be limited to a reasonable period prior to and following the dates as set forth in the...[Notice of] Charge and Complaint", and that "EEOC's tactics amount to no more than a fishing expedition in an effort to expand the claim to include applicants or potential [claimants] from 2000 to 2003".  *Id*. at 2.  Oppositely, EEOC maintains that "it is clear from the limited pre-2004 information produced thus far that the requested discovery will likely produce information vital to EEOC's case" and "will permit EEOC to identify potential claimants, analyze comparators, and conduct a more complete statistical analysis".  *See* EEOC's Br., dkt. entry no. 55-1 at 1-2.

**III.    ARGUMENT**

      **A.    <u>FAPS' Arguments in Support of its Motion to Compel</u>**

            **1.    The Motion should be granted because statistical data regarding the relevant labor market is discoverable.**

                  **(a)    Legal Standard**

Initially, FAPS maintains that EEOC has taken "an erroneous position that FAPS is not entitled to the statistical data on the grounds that [it] is privileged based on attorney work-product and the government deliberative process". *See* FAPS' Br., dkt. entry no. 54-1 at 6-7. Citing FED. R. CIV. P. 26(b)(1), *Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d. Cir. 1991), *Maresco v. Evans Chemetics, Div.*, 964 F.2d 106, 114 (2d Cir. 1992), *Paper Corp. of the United States v. Schoeller Tech. Papers*, 759 F. Supp. 1039, 1048 (S.D.N.Y. 1991), and *Morse/Diesel, Inc. v. Fidelity & Deposit Co.*, 122 F.R.D. 447, 449 (S.D.N.Y. 1988), FAPS notes that "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action" and that such "information is relevant so long as it is reasonably calculated to lead to the discovery of admissible evidence". *Id.* at 6. Further, FAPS contends that relevance "is broadly construed to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case". *Id.* FAPS argues that based upon this standard, EEOC's objections are without merit and FAPS is entitled to the discovery sought. *Id.* at 7.

> **(b)** **EEOC should be ordered to produce statistical data and documents regarding the relevant labor market.**

Consistent with FED. R. CIV. P. 26(b)(1), FAPS notes that it "made a very straightforward request for statistical data and documents which may be crucial to its defense: to demonstrate the relevant labor market". *Id.* EEOC has objected "on the grounds of...relevance and privilege". *Id.* FAPS argues that "all documents referring or relating to statistical data regarding the relevant labor market" are discoverable. *Id.* at 7-8. FAPS maintains that the discovery it seeks is analogous to the discovery request made in *EEOC v. Fina Oil and Chemical Co.*, 145 F.R.D. 74

(E.D. Tex. 1992) (*see also Pacific Molasses Co. v. N.L.R.B.*, 577 F.2d 1172 (5th Cir. 1978)) where the Court determined that an "EEOC statistical report on employment by race based upon data supplied by the defendant [was] discoverable". *Id.* at 8. Additionally, FAPS notes that in *EEOC v. Peoplemark, Inc.*, 2010 WL 748250, at *6-7 (W.D. Mich. 2010), despite EEOC's objection to producing "statistics and demographic data that...[it] had at the time it filed [a] lawsuit...claim[ing]...that the defendant's policies had a disparate impact on African-American applicants" and EEOC's assertion of the "deliberative process privilege, the attorney-client privilege, and/or the work-product doctrine", "[a]fter an *in camera* inspection...the District Court determined...that the defendant was entitled to all documents and statistical evidence regarding disparate impact that...EEOC had in its possession at the time that it filed the lawsuit". *Id.* at 8-9. FAPS points out that the Court held that it was not "sufficient to say [that] the information [would] be forthcoming in [an] expert's report which normally falls due at the end of the period of discovery...since, besides being selective, that simply deprives defendant of an opportunity to adequately investigate and analyze". *Id.* at 9.

FAPS contends that EEOC "makes similar assertions" in response to FAPS' request for "statistical data and analysis regarding the relevant labor market". *Id.* Although "EEOC has established a demographic area in order to determine the relevant labor market", FAPS "has no knowledge of the demographic area that has been determined by...EEOC", "no knowledge of the data used by...EEOC to determine the demographic area", and "is unaware of the data used to compile the statistical analysis or report". *Id.* FAPS argues that it "cannot obtain this information from any other source" and "can only speculate as to the demographic area[,] ...data[,] ...[and/or] what the relevant labor market may be". *Id.* Thus, "[w]ithout reviewing the

statistical data and report...compiled by...EEOC", FAPS claims it will be "hampered in its ability to analyze and ultimately prepare an adequate defense" and will be "at a distinct disadvantage" if production of this information is foreclosed "during the later stage[s] of discovery". *Id.* at 9-10. FAPS maintains that the expense to collect its own data to evaluate various labor market scenarios will impose a significant financial hardship. *Id.*

Citing *Mayor of Philadelphia v. Educational Equality League*, 415 U.S. 605 (1974) and *O'Brien v. Sky Chefs, Inc.*, 670 F.2d 864, 866 (9th Cir. 1982), FAPS notes that "use of statistical reports, data and analysis in a Title VII case is paramount" and "unquestionably relevant in a...disparate treatment case". *Id.* at 10. Citing *Meditz v. City of Newark*, 2011 WL 4470677 (3d Cir. 2011) and *N.A.A.C.P. v. Harrison*, 940 F.2d 792, 798 (3d Cir. 1991), FAPS points out that the Third Circuit recently held that before the District Court "could address the issue of statistical analysis, it must make a determination as to the parameters of the relevant labor market" because "a comparison between the racial composition of those qualified persons in the relevant labor market and that of those in the jobs at issue typically forms the proper basis for the initial inquiry in a disparate impact case". *Id.* Here, from the outset "EEOC has made it known that this case is statistically driven" and therefore it is "without question that the use of statistics is crucial to the prosecution and defense of this case". *Id.* "Whether...EEOC uses the information to determine whether to file a lawsuit..., statistical evidence regarding the relevant labor market is discoverable" because "it will either prove or disprove...EEOC's claim". *Id.* Citing *Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 55 (D.N.J. 1985), FAPS argues that the Court "should not deprive [it] of discovery that is reasonably necessary to develop and prepare its case" because "broad discovery is especially appropriate in employment discrimination claims in which a

claimant's proof of unlawful discrimination may often be indirect or circumstantial". *Id.* at 10-11.

> **(c)     The deliberative process privilege does not apply to factual and objective statistical data.**

Pursuant to *Dept. of the Interior v. Klammath Water Users Protective Association*, 532 U.S. 1, 8 (2001) and *Parke Davis & Co. v. Califano*, 623 F.2d 1, 5 (6th Cir. 1980), FAPS acknowledges that the "governmental deliberative process privilege permits the government to withhold from disclosure documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated" in order "to foster the policy of open, frank discussion between subordinate and chief concerning administrative action". *Id.* at 11.   "To qualify for protection under this privilege, a document must meet two requirements: (1) the document must be 'pre-decisional', ...[meaning that it] must have been received by the decision-maker on the subject of the decision prior to the time the decision [was] made, and (2) the document must be 'deliberative', meaning the document was the result of a consultive process". *Id.*; *see also Rugiero v. U.S. Department of Justice*, 257 F.3d 534, 550 (6th Cir. 2001); *Norwood v. F.A.A.*, 993 F.2d 570, 576-77 (6th Cir. 1993); *Schell v. Dept. of Health & Human Services*, 843 F.2d 933, 940 (6th Cir. 1988).

However, citing *In re Sealed Case*, 121 F.3d 729, 737-38 (D.C. Cir. 1997), FAPS contends that the deliberative process privilege "is a qualified privilege...which may be overcome by a showing of sufficient need" based upon balancing factors of evidentiary need including "the relevance of the evidence sought, the availability of other evidence, the seriousness of the litigation, the role of the government, and the possibility of future timidity by the government"

against "the harm resulting from disclosure". *Id*. at 11-12.  Citing *Skelton v. U.S. Postal Service*, 678 F.2d 35, 38 (5th Cir. 1982), *EPA v. Mink*, 410 U.S. 73, 87-89 (1973), *Mead Data Central, Inc., v. U.S. Dept. of Air Force*, 566 F.2d 242, 254 (D.C. Cir. 1977), and *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975), FAPS maintains that the deliberative process privilege does not protect "materials that are purely factual" such that "a careful case-by-case analysis of the material sought is necessary" in order to determine if "facts...[are] intermixed with analysis", with the test being "whether disclosure would serve only to reveal the evaluative process by which a member of the decision-making chain arrived at his/her conclusion". *Id*. at 12.

Pursuant to *Bobby McCall, et al v. Lockheed Martin Corp.*, 2006 U.S. Dist. LEXIS 46772 (S.D. Miss. 2006) and *Van Aire Skyport Corp. v. FAA*, 733 F. Supp. 316, 321 (D. Colo. 1990), FAPS argues that EEOC has failed to meet its "burden of demonstrating that the requested documents regarding statistical evidence are both pre-decisional and deliberative" with respect to "[t]he facts on which...EEOC based its cause determinations...[and] the documents or testimony on which...EEOC based its finding of fact included in the determinations". *Id*.  FAPS notes that EEOC's privilege log provided the following description with respect to the "RTI Labor Market Analysis and Statistical Analysis", which EEOC claims is not discoverable based on the deliberative process privilege:

> 1.  RTI Labor Market Analysis & Supporting Data
> Prepared by: RTI
> To: EEOC Newark Area Office
> Date: Various Dates
> Description: Case Analysis
> Privilege: GDP
>
> 12.  Statistical Analysis: Reports, Data and Research
> Prepared by: Dana Marucci, Louis Graziano

> Various Dates
> Description: Case Analysis
> Privilege: GDP, AWP

*Id.* at 12-13.  Based upon these descriptions, FAPS argues, "[i]t is hard to discern whether the statistical data and documents are both pre-decisional and deliberative" because "EEOC has failed to provide...sufficient[,] precise and certain reason for invoking the privilege". *Id.* at 13. Given that FAPS "has demonstrated substantial need" for the requested discovery and given that, "[o]n its face, ...EEOC has not clearly demonstrated that the statistical data and documents are protected by the privilege", FAPS contends that EEOC should be compelled to produce the requested discovery. *Id.*

## (d)    The statistical data is non-opinion work product and is therefore discoverable.

Citing FED. R. CIV. P. 26(b)(3), FAPS acknowledges that "the work-product doctrine applies to documents and tangible things prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)". *Id.* Citing *In re Grand Jury Subpoena Dtd. Jan. 4, 1984*, 750 F.2d 223, 224-25 (2d Cir. 1984), *In re Pfohl Bros. Landfill Litig.*, 175 F.R.D. 13, 20-21 (W.D.N.Y. 1997), and *Gould, Inc. v. Mitsui Mining & Smelting Co.*, 825 F.2d 676, 680 (2d Cir. 1987), FAPS maintains that "[a]n unsupported conclusion is insufficient to establish a work product privilege" and "[e]ven if a party follows these steps...[and] the security of the work product doctrine is assured", "[t]here must be the omnipresent concern that revealing the attorney's mental processes is real and not just speculative". *Id.* at 14.  More specifically, pursuant to *Strougo v. BEA Assocs.*, 199 F.R.D. 515,

521 (S.D.N.Y. 2001), *In re Sealed Case*, 676 F.2d 793, 809-10 (D.C. Cir. 1982), and *Upjohn Co.
v. United States*, 449 U.S. 303, 401 (1981), the distinction between "'non-opinion' work-product
and 'opinion' work-product" turns on "the effort employed in obtaining disclosure pursuant to
Rule 26(b)(3)" and for "'non-opinion work product, the party seeking this information must
show a substantial need for the document and undue hardship to acquire the document or its
substantial equivalent by other means". *Id*. Here, FAPS argues that "EEOC has provided only a
bare description of the documents" at issue such that "FAPS is unable to determine whether the
statistical data...are non-opinion or opinion work product". *Id.* "Such an insufficient showing
does not warrant immunity from disclosure" and, therefore, FAPS maintains "the statistical
data...[is] not privilege[d]...and...should be produced". *Id.*

> **2.   Alternatively, FAPS has demonstrated that the requested discovery is
> relevant, thereby warranting an *in camera* review.**

Citing *United States v. Zolin*, 491 U.S. 554, 569 (1989), *In re Grand Jury Subpoenas
(Anderson)*, 906 F.2d 1485, 1493 (10th Cir. 1990), *Mason C. Day Excavating, Inc. v.
Lumbermens Mut. Cas. Co.*, 143 F.R.D. 601, 604 (M.D.N.C. 1992), and *EEOC v. Scrub, Inc.*,
2010 WL 2136807, at *6 (N.D. Ill. 2010), FAPS notes that the Supreme Court "has approved the
practice of requiring parties who seek to avoid disclosure of documents to make the documents
available for *in camera* inspection", that "[t]he decision [of] whether to review documents *in
camera* is within the sound discretion of the trial court", that "the Court must have some bases or
grounds for conducting an *in camera* review" although "[a] showing of relevancy is sufficient to
warrant an *in camera* inspection", and that "[t]he Court may and does review documents *in
camera* to determine an alleged privilege...when the party asserting it has made some initial,

factual showing that it exists".   *Id.* at 15.   FAPS, noting that "an *in camera* inspection is usually

appropriate" when "determining...whether a party's claim of need outweighs the government's

interest in confidentiality", claims that "[t]he privilege log provided by...EEOC can only lead to

guesswork and speculation by the Court" such that the "Court is left with no other alternative".

*Id.*   Further, noting that "courts take a careful case by case...[approach with respect to] materials

sought to be disclosed before making a determination" because "facts can be intermixed with

analysis", FAPS contends that "the test is whether disclosure would serve only to reveal the

evaluative process by which a member of the decision making chain arrived at his/her

conclusion".   *Id.*; *see also N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975).   Here,

FAPS argues that challenges to "EEOC's privilege assertions can only be speculative based upon

its descriptions" such that "it is only fair that...[the] Court review the documents to determine

whether...[they] are indeed privileged".   *Id.* at 16.   "Since...courts have determined that statistical

evidence is relevant to Title VII cases", FAPS maintains that "the review of...EEOC's statistical

data...[is] without question of paramount interest to all".   *Id.*

> **B.**     **EEOC's Arguments in Opposition to FAPS' Motion to Compel**
>
> > **1.**     **The factual material selected, reviewed, and analyzed by EEOC in deciding whether to file a Commissioner's Charge is privileged and must be protected from disclosure.**

Initially, EEOC maintains that the "material in dispute is protected by the...deliberative

process privilege" because it is "both pre-decisional...and deliberative" given that it was

"generated and used before the decision to file a Commissioner's Charge...as part of EEOC's

decision about whether to recommend filing a Commissioner's Charge".   *See* EEOC's Opp'n Br.,

dkt. entry no. 58-1 at 2-3.   Citing *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C.

Cir. 1982), *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975), and *Redland Soccer Club, Inc. v. Dep't of the Army*, 55 F.3d 827 (3d Cir. 1995), EEOC notes that the deliberative process privilege "rests upon the principle that the integrity of the decision-making processes requires that government agencies are free to engage in debate, reflection, and consideration of alternative courses of action free of scrutiny" and, therefore, "requires government agencies to withhold documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which the governmental decisions and policies are formulated" where "it is shown that the documents are 'pre-decisional' and 'deliberative'".   *Id.* at 3.  Further, EEOC notes that "[o]nce it is shown that the privilege applies, it may be overcome only upon a showing that a party's particularized need for the material outweighs the government's need for confidentiality".

*Id.*  Here, EEOC "asserts that the release of the disputed discovery is prohibited by the...deliberative process privilege" and that "[p]rotection from disclosure is warranted" given that "even the factual information itself would reveal EEOC's deliberative process" and given that "[FAPS'] need for the information is exceedingly low".   *Id.*; *see also FTC v. Hope Now Modifications, LLC*, 2011 U.S. Dist. LEXIS 71921 (D.N.J. 2011).

> **(a)    The deliberative process privilege prohibits the release of materials sought by FAPS.**

Citing *Redland Soccer*, 55 F.3d at 854, EEOC acknowledges that "[a] determination of whether the...deliberative process privilege applies requires a two-step analysis": (1) "it must be shown that the information is both pre-decisional and deliberative" and, if it is shown that the privilege applies, (2) "the Court must balance the parties' competing needs" such that the privilege "may be overcome only where the party seeking disclosure can satisfy its burden of

showing that its need for the discovery outweighs the government's interest in maintaining confidentiality". *Id.* at 3-4. "The balance of interests includes considerations of "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable". *Id.*; *see also Redland Soccer*, 55 F.3d at 854; *First Eastern Corp. v. Mainwaring*, 21 F.3d 465, 468 n.5 (D.C. Cir. 1994). Here, EEOC argues that an "[a]nalysis of the relevant factors shows that the...deliberative process privilege was properly asserted...and cannot be overcome by [FAPS'] need for the protected information". *Id.*

### i.       The materials at issue are pre-decisional.

Citing *EEOC v. Albertson's LLC,* 2008 U.S. Dist. LEXIS 95146 (D. Colo. 2008), EEOC notes that "[p]re-decisional material is that which is prepared in order to assist an agency decision-maker in arriving at his decision". *Id.* Here, EEOC maintains that "[t]he material in dispute here was gathered and analyzed as part of [its] internal process of evaluating the hiring patterns and practices of several employers operating out of Port Newark...[in order] to determine whether the filing of a Commissioner's Charge was warranted". *Id.* "Notwithstanding [FAPS'] misunderstanding of this fact", EEOC argues that "the materials at issue were not assembled as part of EEOC's investigation of the [Notice of] Charge against FAPS". *Id.*

### ii.      The materials at issue are deliberative.

Citing *National Wildlife Federation v. U.S. Forest Services*, 861 F.2d 1114, 1117 (9th Cir. 1988), EEOC notes that "[d]eliberative materials are those which reflect the advisory and consultative process by which decisions and policies are formulated". *Id.* Here, EEOC

maintains that the "discovery at issue was assembled as part of the very process by which EEOC decided whether to commit its resources toward pursuing an investigation" and "reveals details and analysis deemed relevant by EEOC in making [that] decision", a process which EEOC argues is "most decidedly deliberative".  *Id.* at 4-5.  Citing *Albertson's*, 2008 U.S. Dist. LEXIS 95146 at *3 and *Montrose Chemical Corp. v. Train*, 491 F.2d 63 (D.C. Cir. 1974), EEOC notes that "[o]ne of the goals of the...deliberative process privilege is to prevent the premature disclosure of proposed policies...and [to] avoid misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's actions".  *Id.* at 5.  Here, EEOC argues that "[d]issemination of the disputed discovery presents such a danger" because "[p]roduction of EEOC's raw data, labor market analysis, and statistical analysis and the facts used to support that analysis, standing alone, will invariably raise more questions than...answers".  *Id.*  EEOC maintains that it "will either be compelled to provide the rationale for its choices...or face the misleading and/or incorrect inferences that [FAPS] would...seek to raise from unexplained data" and contends that "avoidance of such a scenario goes to the heart of the...deliberative process privilege", militating "decidedly against compelled disclosure of the disputed documents".  *Id.*

### iii.   The factual material in withheld documents is protected by the deliberative process privilege.

EEOC contends that FAPS' argument "that the disputed discovery is not privileged because it is factual is wrong as a matter of law" because "[t]he protection afforded by the...deliberative process privilege is not eviscerated simply because factual material has been withheld".  *Id*.  "Numerous courts have recognized[,] and common sense dictates[,] that the

19

subjective choices manifested by the selection of some factual material evidences the thought process of the decision-maker" and "[s]uch manifestations are no less evidence of the deliberative process than opinions and recommendations". *Id.* at 5-6. Citing *In re United States*, 321 Fed. Appx. 953, 960-61 (Fed. Cir. 2009) and *National Wildlife*, 861 F.2d at 1119, EEOC argues that it is "well-recognized that a mechanistic distinction between fact and opinion is not prudent" given that

> whenever the unveiling of factual materials would be tantamount to the 'publication of the evaluation and analysis of the multitudinous facts' conducted by the agency, the deliberative process privilege applies.'. . . [I]t is well-recognized that factual matter contained in government documents can expose deliberations in certain circumstances, and requiring production of the factual information in or related to draft decisions or letters would reveal the government officials' deliberations concerning what factual matter was or was not appropriate for inclusion in the final agency decision or letter.

*Id.* at 6. "Applying this principle", EEOC cites *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1535 (D.C. Cir. 1993), *Wolf v. Department of Health and Human Servs.*, 839 F.2d 768 (D.C. Cir. 1988), *Dudman Communications Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987), *Montrose Chem. Corp. v. Train*, 491 F.2d 63, 71 (D.C. Cir. 1974), and *FTC v. Hope Now Modifications, LLC*, 2011 U.S. Dist. LEXIS 71921 (D.N.J. 2011) and contends that "numerous courts have found that factual material chosen, summarized, and/or relied on during the decision-making process of government agencies are protected by the government deliberative process privilege". *Id.* Further, citing *Florida House of Representatives v. Dep't of Commerce*, 961 F. 2d 941 (11th Cir. 1992), *Hornbostel v. U.S. Dep't of Interior*, 305 F. Supp. 2d 21 (D.C. Cir. 2003), *Quarles v. Dep't of the Navy*, 893 F. 2d 390 (D.C. Cir. 1990), *In re United*

*States*, 321 Fed. Appx. 953 (Fed. Cir. 2009), and *Education Law Center v. N.J. Dept. of Ed.*, 198 N.J. 274 (N.J. 2009), EEOC maintains that "courts have wisely recognized that when deciding what is deliberative[,] the line of demarcation between fact and opinion is no brighter simply because the 'facts' consist of numbers". *Id.* at 6-7.

EEOC notes that *EEOC v. Peoplemark*, 2010 U.S. Dist. LEXIS 17526, at \*10-11 (W.D. Mich. 2010) was "an analogous situation" where EEOC refused to disclose "the analysis of the labor pool in three markets...and a pre-decisional statistical analysis...prepared by EEOC in-house statistical experts before EEOC decided whether to file suit against...[the defendant]". *Id.* at 7. EEOC argues that FAPS' reliance on *Peoplemark* "misses the mark" because in that case, the Court "upheld EEOC's claim that the labor market and statistical analysis were privileged" and the "Court's findings on EEOC's claim of privilege with regard to the other withheld documents was inconclusive" given that "EEOC had not definitively asserted the government deliberative privilege". *Id.* EEOC also argues that "the result in *EEOC v. Fina Oil and Chemical Co.*, 145 F.R.D. 74 (E.D. Tex. 1992) is plainly distinguishable from the present dispute since there [was] no assertion [in that case] that the report was pre-decisional, deliberative or prepared by EEOC's in-house statistical or consulting expert". *Id.* at 7-8.

### iv.    There is an insufficient basis for the Court to conduct an *in camera* review.

Citing *EPA v. Mink*, 410 U.S. 73, 93 (1973) and *Kaiser Aluminum & Chemical Corp. v. U.S.*, 157 F. Supp. 939 (Ct. Cl. 1958), EEOC argues that "[t]he rationale which mandates denial of [FAPS'] motion to compel applies with equal force to its request in the alternative that the Court conduct an *in camera* inspection of the privileged documents" because "the very purpose

of the government deliberative process privilege, the encouragement of open expression of opinion as to the governmental policy, could be impaired simply by requiring an *in camera* review of the documents".  *Id.* at 8.

### 2.      FAPS cannot demonstrate a need for the privileged documents.

EEOC argues that FAPS "has not demonstrated[,] and cannot demonstrate[,] that it has a need for the [subject] documents sufficient to overcome EEOC's assertion of privilege" and, further, maintains that FAPS' argument "rests entirely on the fact that it would prefer to have the information which it believes will be used by EEOC's expert before EEOC submits its expert report".  *Id.*  EEOC notes that it "is not compelled to use, rely upon, or otherwise present the materials or analysis prepared in 2006 when it was deciding whether to recommend the filing of a Commissioner's Charge" and that "[e]ven if the Court were to grant [FAPS'] motion, EEOC's testifying expert will prepare his own statistical analysis using different data than was used in 2006".  *Id.*  "[FAPS] will suffer no prejudice by using the statistical and labor market analysis to be prepared by EEOC's testifying expert in this litigation and performing its own analysis" and, therefore, EEOC argues that "[FAPS'] contention that the [asserted] privileges should be set aside to afford [FAPS] the benefit of EEOC's pre-charge work-product is meritless".  *Id.* at 8-9. Further, EEOC maintains that FAPS "cannot satisfy its burden to show a need for the documents at issue" because "the documents [at issue] are irrelevant to the merits and proofs at the heart of this lawsuit".  *Id.* at 9.  "[FAPS'] argument assumes that the data, analysis, and information obtained, created, and reviewed by EEOC at the time it was deciding whether to pursue a pattern-or-practice charge of discrimination against any number of employers at Port Newark is the same data that EEOC will rely on to prove its case against...FAPS" and "also assumes that the material

withheld by EEOC formed the basis for the determination issued at the conclusion of EEOC's investigation that FAPS'...practices violate Title VII", assumptions which EEOC claims are "wrong".  *Id.*  EEOC argues that "[m]uch of the content of the material at issue is irrelevant to the merits of this litigation...[because] it relates to other employers and...[because] even where it relates solely to...FAPS..., it may not be relied upon by EEOC as evidence in this case".  *Id.* "Since the material was gathered at a different time for a different purpose, its production here would increase the likelihood that the parties, the witnesses, the Court, and eventually...a jury...will become entangled in a side-show about how and why EEOC personnel conducted its deliberative process throughout 2006 when deciding whether and against whom to file a Commissioner's Charge".  *Id.*  Citing *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982), EEOC contends that "[s]uch a diversion from the statistical evidence to be presented in this case is both unnecessary and avoidable" and therefore requests that the Court deny FAPS' Motion. *Id.* at 9-10.

### 3.    The materials compiled by, and the analysis of, EEOC's in-house statistician are not discoverable pursuant to the Federal Rules.

EEOC argues that FAPS' "complaint that it cannot and will not ascertain the relevant labor market applicable here unless [the] Court compels EEOC to produce its labor market analysis is...disingenuous" given that FAPS "concedes that it will, in the usual course of litigation, have full access to any and all data that EEOC intends to rely on to prove its case".  *Id.* at 10.  EEOC maintains that the fact that it "had the benefit of an in-house statistical expert before commencing an investigation into [FAPS'] employment practices...does nothing to alter the parties' respective burdens in this litigation" and the fact that FAPS "will not have the benefit

23

of EEOC's expert analysis until it is due is a plainly insufficient reason to compel disclosure or conduct an *in camera* review". *Id*. Moreover, "[FAPS] is free to retain an expert to help it determine what it will assert the relevant labor market should be in this case". *Id*. More specifically, EEOC maintains that "the role of [its] in-house expert...is akin to the role of a pretrial consultant...whose work-product is explicitly shielded from disclosure pursuant to FED. R. CIV. P. 26(b)(3)". *Id*. EEOC notes that its "in-house statistician is a consultive expert to EEOC throughout the country" and argues that pursuant to FED. R. CIV. P. 26(b)(3) and *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 665 n.7 (3d Cir. 2003), "[i]t is well-settled that communications between a party and its consulting expert constitute protected work product" and that "[s]uch material may be disclosed only upon a showing of exceptional circumstances". *Id*. Here, "[t]here is no exceptional need for disclosure of the consultative expert's work product...since...FAPS...will have the full benefit of EEOC's testifying expert's reports and analysis" and given that EEOC "is free to engage its own experts and prepare its own expert analysis". *Id*. at 10-11.

    **C.**    <u>**EEOC's Arguments in Support of its Motion to Compel**</u>

        **1.**    **The Court should compel production of discovery from January 1, 2000 to December 31, 2003 because the temporal scope is reasonable and encompasses information necessary for EEOC to properly prepare its case.**

Initially, EEOC notes that pursuant to Title VII, 42 U.S.C. § 2000e-6(e), it "may initiate a Charge of Discrimination on its own ("Charge")" where it "believes that an employer has engaged in a pattern or practice of discrimination". *See* EEOC's Br., dkt. entry no. 55-1 at 2-3. Here, pursuant to §§ 706(f)(1) and (3) and § 707 of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3),

*Int'l Bhd of Teamsters v. United States*, 431 U.S. 324 (1977), *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 296 (2002), and *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 326-29, 331 (1980), EEOC states that it "filed a Charge against FAPS, investigated FAPS' hiring practices with respect to race, ...and brought this lawsuit...alleging a pattern or practice of hiring practices that subject African Americans to both disparate treatment and disparate impact". *Id*. at 3. Accordingly, "EEOC requires discovery relating to [FAPS'] recruitment, hiring, and employee selection practices from 2000 to the present". *Id*. EEOC notes that FAPS "refuses to provide discovery relating to the period from 2000 to 2003 on the misplaced grounds that the Complaint contains a 'triggering date of 2004' and...therefore...discovery prior to 2004 is irrelevant". *Id*. Rather, EEOC contends that "[FAPS'] efforts to withhold crucial discovery based on a selective and overly-restrictive reading of the initial pleadings contravenes the well-settled liberal discovery standards typically applied in pattern-or-practice Title VII cases". *Id*. EEOC argues that "[f]ailure to obtain discovery related to [FAPS'] recruitment, selection, and hiring practices during a time when it admittedly hired the majority of its workforce serves to deprive EEOC of the opportunity to identify potential claimants, conduct a more complete statistical analysis, and gather useful insight into [FAPS'] hiring practices". *Id*. at 3-4.

> **(a)     The temporal scope of EEOC's discovery requests is reasonable.**

Citing FED. R. CIV. P. 26(b)(1) and *Salamone v. Carter's Retail, Inc.*, 2011 U.S. Dist. LEXIS 8425, at *27-28 (D.N.J. 2011), EEOC notes that parties are permitted to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and "courts have construed this rule liberally, creating a broad vista for discovery". *Id*. at 4. Citing

*Harris v. Public Service Elec. & Gas Co.*, 2007 U.S. Dist. LEXIS 5412, at *5-6 (D.N.J. 2007), *Kresesky v. Panasonic Comm. & Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996), *Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir. 1995), *cert. denied*, 515 U.S. 1159 (1995), and *Robbins v. Camden City Bd. of Ed.*, 105 F.R.D. 49, 55 (D.N.J. 1985), EEOC maintains that "[t]his broad scope of permissible discovery holds especially true in Title VII cases, where courts have been cautioned not to impose unnecessary limitations on discovery". *Id.* Citing *James v. Newspaper Agency Corp.*, 591 F.2d 579 (10th Cir. 1979), *Lyoch v. Anheuser-Busch Co.*, 164 F.R.D. 62, 67 (E.D. Mo. 1995), *Stevenson v. Gen. Elec. Co.*, 1978 U.S. Dist. LEXIS 15133, at *3 (S.D. Ohio 1978), *Milner v. Nat'l Sch. of Health Tech.*, 73 F.R.D. 628, 632 (E.D. Pa. 1977), *McClain v. Mack Trucks, Inc.*, 85 F.R.D. 53, 62 (E.D. Pa. 1979), and *Cormier v. PPG Indus.*, 452 F. Supp. 594 (W.D. La. 1978), EEOC claims that "[c]onsistent with the liberal construction accorded the discovery rules, a determination of the permissible temporal scope of discovery is...broadly construed" and "[e]ven in cases involving only individual claims of discrimination, courts routinely extend the scope of discovery to a reasonable number of years prior to the liability period". *Id.* at 4-5. Moreover, pursuant to *Robbins*, 105 F.R.D. at 55, *Miller v. Hygrade Food Prods. Corp.*, 89 F. Supp. 2d 643, 657 (E.D. Pa. 2000), *Wilson v. International Flavors & Fragrances, Inc.*, 2010 U.S. Dist. LEXIS 43405 (D.N.J. 2010), *Harris*, 2007 U.S. Dist. LEXIS 5412 at *9-10, *Waters v. U.S. Capitol Police Bd.*, 216 F.R.D. 153, 159 (D.D.C. 2003), and *Milner*, 73 F.R.D. at 632, EEOC contends that "[c]ourts within the Third Circuit have followed suit" and permit discovery in such cases within a reasonable number of years prior to the liability period. *Id.* at 5-6.

   EEOC argues that its "effort[s] to obtain discovery for the three-year period preceding the

known use of discriminatory recruitment, selection, and hiring practices is supported by the Federal Rules of Civil Procedure and...relevant decisional law". *Id*. at 6. Further, EEOC argues that "[t]he reasonableness of the temporal scope of [its] discovery requests is heightened by the unique posture of this case, a class case brought by EEOC". *Id*. Pursuant to FED. R. CIV. P. 23, *Gen. Tel. Co.*, 446 U.S. at 326-29, 331, *Waffle House*, 534 U.S. at 291, *EEOC v. Gen. Elec. Co.*, 532 F.2d 359, 364 (4th Cir. 1979), and *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 462, 468 (6th Cir. 1999), EEOC notes that it "enjoys a unique and broad grant of statutory authority to pursue pattern-or-practice claims against private entities", that it is "unencumbered by the same limitations and obstacles faced by private litigants", and that "EEOC class cases are not subject to Rule 23, are not limited to or defined by charging parties' claims, and are not bound by traditional statutes of limitations". *Id*. Thus, EEOC requests that its Motion be granted and that FAPS be compelled to produce discovery from 2000-2003. *Id*.

### (b)      The disputed discovery requests seek relevant information.

EEOC maintains that "[a]dditional considerations amplify the need for discovery of information related to [FAPS'] recruitment, hiring, and selection practices from 2000 through 2003". *Id.* Specifically, "EEOC will present expert testimony...showing that [FAPS'] recruitment, selection, and hiring practices have resulted in a statistically significant shortfall of African American applicants and hires" and "[i]nformation related to [FAPS'] hiring patterns, the race of the applicants, and the race and qualification of the [employees] over a ten year period will permit EEOC to conduct a more complete statistical analysis", "gather useful insight into [FAPS'] hiring patterns and practices", and "identify additional potential claimants". *Id.* at 6-7.

### 2.      The Court should compel FAPS to produce the disputed discovery

> **because FAPS cannot show that EEOC's discovery requests seek irrelevant information or that production would be unduly burdensome.**

EEOC maintains that FAPS "cannot satisfy its burden of showing that the discovery [requested] is irrelevant or burdensome". *Id*. at 7.  More specifically, EEOC argues that FAPS' "refusal to provide discovery relating to the disputed timeframe rests...on grounds that the initial pleading in this case purportedly 'contains a triggering date of 2004'", an assertion that is "incorrect and rests on an overly-restrictive, if not self-serving and selective, reading of the Complaint" and "ignores the plain and full meaning of the language".  *Id*.  EEOC notes that the Complaint states that "[FAPS] has engaged in an ongoing pattern or practice of discrimination since at least 2004" such that "information regarding [FAPS'] recruitment, hiring, and selection practices prior to 2004 [is] relevant".  *Id*.  Further, citing *Guiterrez v. Johnson & Johnson, Inc.*, 2002 U.S. Dist. LEXIS 15418, at *10, 23 (D.N.J. 2002), EEOC maintains that FAPS "has not satisfied its burden of showing that production of additional documents and responses would be unduly burdensome" given that "a party...must convince the Court that [the] burden is so great that it outweighs the ordinary presumption in favor of discovery".  *Id*. at 7-8.  EEOC argues that "[w]eighing the burden of production against the factors set forth [in] FED. R. CIV. P. 26(b)(2)(C)(iii)" favors production given "the prejudicial impact" that denying the Motion would work on the public interest by limiting "the potential claimants and...victims...[who would have] an opportunity to be made whole for the harm they have suffered".  *Id*. at 8.  EEOC also claims that if access to the requested discovery is denied, such a limitation on the evidence would hamper its ability to present and prove its case.  *Id*.

> **3.    A determination of the proper temporal scope of discovery is**

28

**unrelated to the scope of EEOC's administrative investigation.**

EEOC maintains that "[d]iscovery in this litigation is not confined to the parameters of inquiry undertaken during EEOC's administrative investigation" and that FAPS' contention that "EEOC is not entitled to discovery relating to [FAPS'] recruitment, hiring, or selection practices prior to 2004 on grounds that EEOC did not focus on pre-2004 during the initial investigation is wrong as a matter of law". *Id.* at 8-9.  Citing *EEOC v. Keco Indus., Inc.*, 748 F.2d 1097, 1100 (6th Cir. 1984), *EEOC v. New York News, Inc.*, 1985 U.S. Dist. LEXIS 17462, at *3 (S.D.N.Y. 1985), and *EEOC v. Hibbing Taconite Co.*, 266 F.R.D. 260, 272 (D. Minn. 2009), EEOC argues that "Courts have repeatedly held that the sufficiency of EEOC's administrative investigation and determination is not judicially reviewable" because same "would deflect the efforts of both the Court and the parties from the main purpose of the litigation". *Id.* at 9.  Citing *EEOC v. Home Insurance Co.*, 1981 U.S. Dist. LEXIS 11668, at *3 (S.D. Tex. 1981) and *EEOC v. Hickey-Mitchell Co.*, 372 F. Supp. 1117, 1121 (E.D. Mo. 1973), EEOC further argues that since its "investigation is not an adjudicative proceeding but simply an investigation to determine if there is a basis for the discrimination charge that was filed[,] and because litigation is *de novo*, the fact that EEOC conducted an administrative investigation should not prohibit or limit discovery".  *Id.*  In *Home Insurance*, the Court made clear that a

> lawsuit is separate and distinct from...EEOC's initial reasonable cause determination proceedings.  It is undisputed that a private individual would not be bound to the scope of the initial EEOC investigation in a subsequent action in federal court.  It is equally clear that...EEOC suing on behalf of a class of individuals should not be so bound.

*Id.* at 9-10.  Here, EEOC claims that "the temporal scope of the inquiry undertaken...during its

administrative investigation has no relevance" and that "[FAPS'] effort to limit EEOC's ability to engage in discovery in this litigation should not be countenanced". *Id*. at 10.

### B.   FAPS' Arguments in Opposition to EEOC's Motion to Compel

#### 1.   EEOC's Motion should be denied as patently unreasonable.

Although EEOC claims that the requested discovery will likely produce "[i]nformation related to persons who applied for work during the disputed period", "[p]ersons who were hired at that time", and "[t]he type of jobs filled by [FAPS] during that time", FAPS maintains that it "has [already] produced all documents in its possession that cover the time period from January 1, 2003 to the present during both the investigation and litigation stage". *See* FAPS' Opp'n Br., dkt. entry no. 57 at 6.   Citing FED. R. CIV. P. 26(b)(1) and FED. R. CIV. P. 26(b)(2)(C), FAPS notes that although "parties may obtain discovery regarding any matter...which is relevant to the subject matter involved in the pending action", "the court must limit the frequency or extent of discovery otherwise allowed...if it determines that...the discovery sought is unreasonably cumulative or duplicative, ...can be obtained from some other source that is more convenient, less burdensome, or less expensive", if it determines that "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action", or if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit...". *Id.* at 6-7. Further, citing *Marroquin-Manriques v. Immigration and Naturalization Serv.*, 699 F.2d 129, 134 (3d Cir. 1983), FAPS contends that it is "well-established that the scope and conduct of discovery are within the sound discretion of the trial court". *Id.* at 7.

Noting that EEOC "asserts that it requires discovery relating to FAPS' recruitment, hiring and employee selection practices from 2000 to the present", FAPS argues that "EEOC attempts

to mislead the Court by stating that...'[FAPS] refuses to provide discovery relating to the period from 2000 to 2003 on the misplaced grounds that the Complaint [contained] a triggering date of 2004' and, ...[that] discovery prior to...2004 is irrelevant". *Id.* To the contrary, FAPS maintains that its objections are based, in large part, on the fact that it "has little or no documentation regarding applications, recruitment and hiring pre-2003", a fact which "was made known to...EEOC as early as February 2008". *Id.* Based upon FAPS' "effort to respond with information and documents that have been located", FAPS claims that the Court "should limit the extent [of] discovery to that which has already been produced from January 1, 2002 to the present". *Id.*

**(a)      The temporal scope of discovery should be limited.**

FAPS notes that it "provided general and specific objections to the temporal scope of discovery", claiming that "EEOC's discovery requests [were] overly broad, unduly burdensome and beyond the scope of the triggering date as identified in the Charge and the Complaint" and therefore it limited the "temporal scope of its production...[to] January 1, 2002 to the present". *Id*. Citing *Brown v. United Parcel Serv., Inc.*, 1982 U.S. Dis. LEXIS 16328, at *2 (N.D. Ohio 1982), *Stevenson v. General Electric Co.*, 1978 WL 150, at *1 (S.D. Ohio 1978), *McClain v. Mack Trucks, Inc.*, 85 F.R.D. 53, 57 (E.D. Pa. 1979), and *Regent Nat'l Bank v. Dealers Choice Automotive Planning*, 1998 WL 961377, at *6 (E.D. Pa. 1998), FAPS notes that "the scope of discovery through interrogatories and requests for production is particularly broad in a Title VII case" but "is not without its limits and is committed to the sound discretion of the trial court". *Id*. at 8. Citing *Takacs v. Union County*, 2009 U.S. Dist. LEXIS 87632 (D.N.J. 2009) and *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999), FAPS argues that "[a] discovery request

31

may be denied if, after assessing the needs of the case, the amount in controversy, the parties'
resources, the importance of the issues at stake in the action, and the importance of the discovery
in resolving the issues, ...the District Court finds that there exists a likelihood that the resulting
benefits would be outweighed by the burden or expenses imposed as a consequence of the
proposed discovery". *Id.* Citing *Bowers v. National Collegiate Athletic Assoc.*, 2008 WL
1757929, at *4 (D.N.J. 2008), *Leksi, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99, 105 (D.N.J. 1989),
and *Public Service Group, Inc. v. Philadelphia Elec. Co.*, 130 F.R.D. 543, 551 (D.N.J. 1990),
FAPS notes that "[t]he purpose of [the] rule of proportionality is to guard against redundant or
disproportionate discovery by giving the court authority to reduce the amount of discovery that
may be directed to matters that are otherwise proper subjects of inquiry". *Id.*

FAPS cites *Miller v. Hygrade Food Prods. Corp.*, 89 F. Supp. 2d 643, 657 (E.D. Pa.
2000), *Steven v. General Electric Co.*, 1978 WL 150, at *1 (S.D. Ohio 1978), *Milner v. Nat'l
Sch. of Health Tech.*, 73 F.R.D. 628, 632 (E.D. Pa. 1977), *Cormier v. PPG Indus.*, 452 F. Supp.
594 (W.D. La. 1978), *Lyoch v. Anheuser-Busch Co.*, 164 F.R.D. 62, 67 (E.D. Mo. 1995), *James
v. Newspaper Agency Corp.*, 591 F.2d 579 (10th Cir. 1979), and *Clarke v. Mellon Bank*, 1993
WL 170950, at *2 (E.D. Pa. 1993) for the proposition "that discovery of conduct predating the
liability period of a Title VII lawsuit is relevant and courts have commonly extended the scope of
discovery to a reasonable number of years prior to the liability period of a Title VII lawsuit"
based upon balancing "the clear relevance of the information against the burden on the
defendant". *Id.* at 8-9.  Further, pursuant to *Regent Nat'l Bank*, 1998 WL 961377 at *6, *Clarke*,
1993 WL 170950 at *2, and *McClain*, 85 F.R.D. at 57, FAPS notes that "[i]n setting time limits,
courts generally consider relevancy and the burdensomeness of furnishing the information

requested by the plaintiff" such that "the party seeking the discovery has the burden of clearly showing the relevancy of the information sought". *Id*. at 9.

FAPS contends that it has been "unequivocal in its response that [it] had been unable to locate applications, recruitment or hiring data prior to 2003". *Id*.  FAPS did provide "applications from 2003 to 2007...as well as summary sheets of the requested information", "various employee lists which list the hiring data for each FAPS employee", and "approximately 2,550 pages" *in toto* throughout EEOC's three-year investigation. *Id*.  FAPS represents that it "searched, reviewed and produced all information responsive to...[EEOC's] discovery requests that was in its possession" at that time. *Id*. at 10.  Nevertheless, "EEOC [now] asserts that this Court should...ignore the fact [that] FAPS...produced information and discovery responses...during the investigation and litigation phases...after...complet[ing] a diligent search and inquiry" while ignoring the fact that FAPS represented that it "has...[no] other [responsive] information or...documents...which cover the period from January 1, 2000 to December 31, 2002". *Id*.  Further, pursuant to *Gaul v. Zep Manufacturing Company*, 2004 WL 231298 (E.D. Pa. 2004), FAPS maintains that because "both the Charge and the Complaint identify 2004 as the date in which [EEOC] alleges [that] FAPS [began] engag[ing] in a pattern and/or practice of discriminatory recruitment and hiring practices" and because "District Courts have utilized the filing date of the Charge as the baseline in defining the temporal scope of discovery", "it is only reasonable to establish the temporal scope of discovery as encompassing 2002 through 2009...since the Charge was issued in 2007". *Id*.

**(b)**     **The Court should not countenance EEOC's fishing expedition.**

Citing *Bayer*, 173 F.3d at 191 and *Salamone v. Carter's Retail, Inc.*, 2009 U.S. Dist.

33

LEXIS 8425, at *3 (D.N.J. 2011), FAPS maintains that notwithstanding the fact that "EEOC...wants the information...[at issue] so that it can review additional data to determine whether it wants to expand the number of claimants", "EEOC's right to discovery is not unlimited".  *Id*.  Citing *EEOC v. Freeman*, 2010 WL 1728847, at *2, 6 (D. Md. 2010), FAPS notes that courts have "declined to invoke the continuing violation doctrine to expand the class of individuals for whom...EEOC sought relief under Title VII" given that EEOC cannot "seek relief for individuals denied employment more than 300 days prior to filing of the administrative charge prompting the EEOC investigation".  *Id*. at 10-11.   Rather, in *Freeman* the Court "determined that [the] charge-filing date...was the date of the charge" for "purposes of the statute of limitations".  *Id*. at 11.   FAPS argues that this case is "no different from *Freeman*" because, although "EEOC wants to reach back 11 years...in hopes that the data will reveal additional individuals so that [EEOC] can expand its class of claimants", "the period from 2000 through 2002 clearly predates the 300-day filing period...".  *Id*.   FAPS contends that "[t]he Court should not permit...EEOC to search for additional individuals in hopes that one or many may surface" because the temporal scope of "EEOC's request is...contrary to law...[and] exceeds the boundaries of justice and fairplay".  *Id*.

> **2.    All discovery produced by FAPS during the investigation is inextricably linked to this lawsuit and is therefore fully responsive.**

Noting that "EEOC conducted its administrative investigation and conciliation from November 2007 through late 2009" and, "[a]fter conciliation was unsuccessful, ...initiated litigation against FAPS", FAPS maintains that it is hypocritical "[t]o say that [the] investigation has nothing to do with [this] litigation".  *Id*. at 12.  Although EEOC "has cited a number of cases

[related to] the sufficiency of the administrative investigation and the Court's ability to review same", FAPS states that it is "not...attacking the sufficiency of the investigation" and is not "requesting that the Court review the substance of the investigation regarding its determination". *Id.* Rather, FAPS "is requesting that the Court not ignore the fact that FAPS has complied with...EEOC's discovery requests during the investigation and litigation to the tune of 5,500 pages" and is requesting that the Court recognize that FAPS "cannot produce what does not exist". *Id.* FAPS argues that the administrative investigation performed by EEOC is not wholly "separate and district" from this litigation and, therefore, "[i]t is neither unrealistic nor unreasonable for FAPS to have incorporated and referred...EEOC to documents produced...[during the] investigation". *Id.* FAPS argues that EEOC "has failed to grasp...that FAPS has provided all information and documents in its possession regarding recruitment and hiring from 2003 to the present", "that no other documents could be located", and that "should additional documents be located, they [will] be provided to...EEOC". *Id.* at 12-13. In this instance, "FAPS is only seeking to limit the temporal scope of discovery to the time period in which it has...documents" because it "has no information or documents to produce relative to the recruitment and hiring of African American[s] and women from January 1, 2000 to December 31, 2002". *Id.* at 13.

## IV.  DISCUSSION

### A.   Legal Standards

#### 1.   EEOC Powers and Limitations

Pursuant to 42 U.S.C. § 12117,

> (a) Powers, remedies, and procedures.  The powers, remedies

and procedures set forth in sections 705, 706, 707, 709, and 710 of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9) shall be the powers, remedies, and procedures this title provides to the [Equal Employment Opportunity] Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this Act, or regulations promulgated under section 106 [42 U.S.C. § 12116] concerning employment.

Under § 706, the EEOC may sue on behalf of one or more persons aggrieved by an unlawful employment practice. 42 U.S.C. § 2000e-5(f)(1). Under § 707, the EEOC may investigate and act on a charge of a pattern or practice of discrimination, whether filed by or on behalf of a person claiming to be aggrieved or by a member of the Commission. *Id*. at § 2000e-6(a)-(e). Section 706(e)(1) provides:

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

42 U.S.C. § 2000e-5(e)(1).

"How the Section 706(e)(1) requirement impacts a lawsuit brought by the EEOC, rather than one brought by an aggrieved individual", is an issue about which courts have

issued divergent rulings.  *EEOC v. Freeman*, 2010 U.S. Dist. LEXIS 41336, at *11.  In some instances, courts have found that the EEOC is empowered to obtain relief for all class members harmed by a discriminatory policy, irrespective of the date the harm occurred.  *See, e.g., EEOC v. Shell Oil Co.*, 466 U.S. 54, 69 (1984); *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 296 (2002); *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 347-48 (1977); *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 372-73 (1977); *EEOC v. Sterling Jewelers, Inc.*, 2009 U.S. Dist. LEXIS 122102, at *5 (W.D.N.Y. 2009); *EEOC v. Kimberly-Clark Corp.*, 511 F.2d 1352, 1359-60 (6th Cir. 1975); *EEOC v. Wilson Metal Casket Co.*, 24 F.3d 836 (6th Cir. 1994); *EEOC v. Scolari Warehouse Mkts., Inc.*, 488 F. Supp. 2d 1117, 1136 (D. Nev. 2007); *EEOC v. LA Weight Loss*, 509 F. Supp. 2d 527, 535 (D. Md. 2007); *EEOC v. Mitsubishi Motor Mfg. of Am., Inc.*, 990 F. Supp. 1059, 1084 (C.D. Ill. 1998); *EEOC v. Rymer Foods, Inc.*, 1989 U.S. Dist. LEXIS 9003, at *4 (N.D. Ill. 1989).  In other instances, however, courts have found that "the class of individuals for whom the EEOC can seek relief" is limited "to those individuals who were allegedly subjected to unlawful employment practices during the 300 days…before the filing of the triggering charge".  *EEOC v. Freeman*, 2010 U.S. Dist. LEXIS 41336, at *12-13; *see also, e.g., EEOC v. Burlington Med. Supplies, Inc.*, 536 F. Supp. 2d 647, 659 (E.D. Va. 2008); *EEOC v. Custom Cos.*, 2004 U.S. Dist. LEXIS 5950, at *10-11 (N.D. Ill. 2004); *EEOC v. Optical Cable Corp.*, 169 F. Supp. 2d 539, 546 (W.D. Va. 2001); *EEOC v. Kovacevich "5" Farms*, 2007 U.S. Dist. LEXIS 32330, at *17 (E.D. Ca. 2007); *EEOC v. Bloomberg*, 2010 U.S. Dist. LEXIS 113789, at *49-51 (S.D.N.Y. 2010); *EEOC v. Kaplan Higher Education Corp.*, Civ. Action No. 10-2882 (N.D. Oh. 2011), dkt. entry no. 26.

The Court notes that pursuant to 42 U.S.C. § 2000e-8,

(a) Examination and copying of evidence related to unlawful employment practices.  In connection with any investigation of a charge filed under section 706 [42 USCS § 2000e-5], the Commission or its designated representative shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this title [42 USCS §§ 2000e *et seq.*] and is relevant to the charge under investigation.

(b) Cooperation with State and local agencies administering State fair employment practices laws; participation in and contribution to research and other projects; utilization of services; payment in advance or reimbursement; agreements and rescission of agreements.  The Commission may cooperate with State and local agencies charged with the administration of State fair employment practices laws and, with the consent of such agencies, may, for the purpose of carrying out its functions and duties under this title [42 USCS §§ 2000e *et seq.*] and within the limitation of funds appropriated specifically for such purpose, engage in and contribute to the cost of research and other projects of mutual interest undertaken by such agencies, and utilize the services of such agencies and their employees, and, notwithstanding any other provision of law, pay by advance or reimbursement such agencies and their employees for services rendered to assist the Commission in carrying out this title [42 USCS §§ 2000e *et seq.*].  In furtherance of such cooperative efforts, the Commission may enter into written agreements with such State or local agencies and such agreements may include provisions under which the Commission shall refrain from processing a charge in any cases or class of cases specified in such agreements or under which the Commission shall relieve any person or class of persons in such State or locality from requirements imposed under this section.  The Commission shall rescind any such agreement whenever it determines that the agreement no longer serves the interest of effective enforcement of this title [42 USCS §§ 2000e *et seq.*].

(c) Execution, retention, and preservation of records; reports to Commission; training program records; appropriate relief from regulation or order for undue hardship; procedure for exemption; judicial action to compel compliance.  Every employer,

employment agency, and labor organization subject to this title [42 USCS §§ 2000e *et seq.*] shall (1) make and keep such records relevant to the determinations of whether unlawful employment practices have been or are being committed, (2) preserve such records for such periods, and (3) make such reports therefrom as the Commission shall prescribe by regulation or order, after public hearing, as reasonable, necessary, or appropriate for the enforcement of this title [42 USCS §§ 2000e, *et seq.*] or the regulations or orders thereunder.   The Commission shall, by regulation, require each employer, labor organization, and joint labor-management committee subject to this title [42 USCS §§ 2000e, *et seq.*] which controls an apprenticeship or other training program to maintain such records as are reasonably necessary to carry out the purposes of this title [42 USCS §§ 2000e, *et seq.*], including, but not limited to, a list of applicants who wish to participate in such program, including the chronological order in which applications were received, and to furnish to the Commission upon request, a detailed description of the manner in which persons are selected to participate in the apprenticeship or other training program.  Any employer, employment agency, labor organization, or joint labor-management committee which believes that the application to it of any regulation or order issued under this section would result in undue hardship may apply to the Commission for an exemption from the application of such regulation or order, and, if such application for an exemption is denied, bring a civil action in the United States district court for the district where such records are kept.  If the Commission or the court, as the case may be, finds that the application of the regulation or order to the employer, employment agency, or labor organization in question would impose an undue hardship, the Commission or the court, as the case may be, may grant appropriate relief.  If any person required to comply with the provisions of this subsection fails or refuses to do so, the United States district court for the district in which such person is found, resides, or transacts business, shall, upon application of the Commission, or the Attorney General in a case involving a government, governmental agency or political subdivision, have jurisdiction to issue to such person an order requiring him to comply.

(d) Consultation and coordination between Commission and interested State and Federal agencies in prescribing recordkeeping and reporting requirements; availability of information furnished

pursuant to recordkeeping and reporting requirements; conditions on availability.  In prescribing requirements pursuant to subsection (c) of this section, the Commission shall consult with other interested State and Federal agencies and shall endeavor to coordinate its requirements with those adopted by such agencies.  The Commission shall furnish upon request and without cost to any State or local agency charged with the administration of a fair employment practice law information obtained pursuant to subsection (c) of this section from any employer, employment agency, labor organization, or joint labor-management committee subject to the jurisdiction of such agency.  Such information shall be furnished on condition that it not be made public by the recipient agency prior to the institution of a proceeding under State or local law involving such information.  If this condition is violated by a recipient agency, the Commission may decline to honor subsequent requests pursuant to this subsection.

More specifically, pursuant to 29 C.F.R. § 1602.7,

On or before September 30 of each year, every employer that is subject to title VII of the Civil Rights Act of 1964, as amended, and that has 100 or more employees shall file with the Commission or its delegate executed copies of Standard Form 100, as revised (otherwise known as "Employer Information Report EEO-1" ("EEO-1 Reports")) in conformity with the directions set forth in the form and accompanying instructions.  Notwithstanding the provisions of § 1602.14, every such employer shall retain at all times at each reporting unit, or at company or divisional headquarters, a copy of the most recent report filed for each such unit and shall make the same available if requested by an officer, agent, or employee of the Commission under the authority of section 710 of title VII. Appropriate copies of Standard Form 100 in blank will be supplied to every employer known to the Commission to be subject to the reporting requirements, but it is the responsibility of all such employers to obtain necessary supplies of the form from the Commission or its delegate prior to the filing date.

## 2.    Discovery

Pursuant to FED. R. CIV. P. 26(b)(1), "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and "the court may order

discovery of any matter relevant to the subject matter involved in the action," although "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *See also Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000). Importantly, pursuant to FED. R. CIV. P. 26(b)(2)(C), "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

> (i)    the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii)   the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii)  the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

The precise boundaries of the Rule 26 relevance standard depend upon the context of each particular action, and the determination of relevance is within the discretion of the District Court. *See Barnes Found. v. Twp. of Lower Merion*, 1996 WL 653114, at *1 (E.D. Pa. 1996). Importantly, "Courts have construed this rule liberally, creating a broad vista for discovery". *Takacs v. Union County*, 2009 WL 3048471, at *1 (D.N.J. 2009)(*citing Tele-Radio Sys. Ltd. v. DeForest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981)); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Evans v. Employee Benefit Plan*, 2006 WL 1644818, at *4 (D.N.J. 2006); *Jones v. Derosa*, 238 F.R.D. 157, 163 (D.N.J. 2006); *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000); *Lesal Interiors, Inc. v. Resolution Trust Corp.*, 153 F.R.D.

552, 560 (D.N.J. 1994); *Glenz v. Sharp Electronic Corp.*, 2010 U.S. Dist. LEXIS 69332, at *2-3

(D.N.J. 2010).  A broad vista for permissible discovery "holds especially true in Title VII cases,

where courts have been cautioned not to impose unnecessary limitations on discovery." *Harris*,

2007 U.S. Dist. LEXIS 5412, at *5-6; *see also Kresefsky v. Panasonic Commc'n and Sys. Co.*,

169 F.R.D. 54, 64 (D.N.J. 1996); *Sempier*, 45 F.3d at 734, *cert. denied*, 515 U.S. 1159 (1995).

"Whether certain documents are relevant is viewed in light of the allegations of the

complaint, not as to evidentiary admissibility." *Hickman*, 329 U.S. at 507; *see also Scouler v.

Craig*, 116 F.R.D. 494, 496 (D.N.J. 1987).  "The party seeking discovery has the burden of

showing that the information sought is relevant to the subject matter of the action and may lead

to admissible evidence".  *Caver*, 192 F.R.D. at 159; *see also Nestle Foods Corp. v. Aetna Cas. &

Sur. Co.*, 135 F.R.D. 101, 104-05 (D.N.J. 1990).  However, "the party resisting discovery has the

burden of clarifying and explaining its objections to provide support therefor." *Tele-Radio*, 92

F.R.D. at 375; *see also Gulf Oil Corp. v. Schlesinger*, 465 F. Supp. 913, 916-17 (E.D. Pa. 1979);

*Robinson v. Magovern*, 83 F.R.D. 79, 85 (E.D. Pa. 1979); *Nestle Foods*, 135 F.R.D. at 105.

More specifically, "[t]he party resisting production of discovery bears the burden of establishing

lack of relevancy or undue burden;" "must demonstrate to the Court that the requested

documents either do not come within the broad scope of relevance as defined in FED. R. CIV. P.

26(b)(1) or else that they are of such marginal relevance that the potential harm occasioned by

discovery would outweigh the ordinary presumption in favor of broad disclosure;" and "must do

more than argue that to compile and produce [documents] would be burdensome." *Guiterrez v.

Johnson & Johnson, Inc.*, 2002 U.S. Dist. LEXIS 15418, at *22-23 (D.N.J. 2002); *see also Flora

v. Hamilton*, 81 F.R.D. 576 (M.D.N.C 1978); *Burke v. New York City Police Department*, 115

F.R.D. 220, 224 (S.D.N.Y. 1987).   However, "a discovery request may be denied if, after assessing the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues, the District Court finds that there exists a likelihood that the resulting benefits would be outweighed by the burden or expenses imposed as a consequence of the proposed discovery." *Takacs*, 2009 WL 3048471, at *1; *see also Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).   "The purpose of this rule of proportionality is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry."   *Takacs*, 2009 WL 3048471, at *1(*citing Bowers v. National Collegiate Athletic Assoc.*, 2008 WL 1757929, at *4 (D.N.J. 2008)); *see also Leksi, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99, 105 (D.N.J. 1989); *Public Service Group, Inc. v. Philadelphia Elec. Co.*, 130 F.R.D. 543, 551 (D.N.J. 1990).

"In a Title VII case, [the] scope [of discovery] is particularly broad" such that "[i]nformation relevant to an EEOC inquiry is likewise relevant in an individual action...and if the information has potential cogency to the case, the defendant must shoulder the burden." *Milner*, 73 F.R.D. at  632; *see also Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343 (10th Cir. 1975); *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300 (5th Cir. 1972).  "It is well established that discovery of conduct predating the effective date of Title VII is relevant" but "where plaintiffs, or the EEOC, seek discovery running into the past, courts have set limits on the ground of burdensomeness" ranging from three (3) to twelve (12) years.  *Id.*; *see also Burns*, 483 F.2d at 306; *Evans v. I.B.E.W.*, 313 F. Supp. 1354, 1360 (N.D. Ga. 1969); *Georgia Power Co. v. EEOC*, 295 F. Supp. 950 (N.D. Ga.), *aff'd*, 412 F.2d 462 (5th Cir. 1969); *EEOC v. Magnetics Division of*

43

*Spang Industries*, 23 Fed. R. Serv. 2d (Callaghan) 587 (W.D. Pa. 1976); *General Insurance Co. v. EEOC*, 491 F.2d 133 (9th Cir. 1974); *Stevenson*, 1978 U.S. Dist. LEXIS 15133, at *3; *James*, 591 F.2d 579; *Lyoch,*, 164 F.R.D. at 67; *McClain*, 85 F.R.D. at 62; *Cormier*, 452 F. Supp. 594; *Robbins*, 105 F.R.D. at 55 (D.N.J. 1985); *Miller*, 89 F. Supp. 2d at 657; *Wilson*, 2010 U.S. Dist. LEXIS 43405; *Harris*, 2007 U.S. Dist. LEXIS 5412, at *9-10; *Waters v. U.S. Capitol Police Bd.*, 216 F.R.D. 628, 632 (E.D. Pa. 1977).

With respect to EEO-1 Reports, pursuant to 42 U.S.C. § 2000e-8,

> ...
> (e) Prohibited disclosures; penalties.  It shall be unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this title [42 USCS §§ 2000e, *et seq.*] involving such information.  Any officer or employee of the Commission who shall make public in any manner whatever any information in violation of this subsection shall be guilty of a misdemeanor and upon conviction thereof, shall be fined not more than $ 1,000, or imprisoned not more than one year.

However, pursuant to 29 C.F.R. § 1601.22,

> Neither a charge, nor information obtained during the investigation of a charge of employment discrimination under title VII, the ADA, or GINA, nor information obtained from records required to be kept or reports required to be filed pursuant to title VII, the ADA, or GINA, shall be made matters of public information by the Commission prior to the institution of any proceeding under title VII, the ADA, or GINA involving such charge or information. This provision does not apply to such earlier disclosures to charging parties, or their attorneys, respondents or their attorneys, or witnesses where disclosure is deemed necessary for securing appropriate relief.  This provision also does not apply to such earlier disclosures to representatives of interested Federal, State, and local authorities as may be appropriate or necessary to the carrying out of the Commission's function under title VII, the ADA, or GINA, nor to the publication of data derived from such

> information in a form which does not reveal the identity of
> charging parties, respondents, or persons supplying the
> information.

"In its regulation governing disclosure, the Commision has construed the statute's prohibition of 'public' release of information to permit prelitigation disclosure of charges and of investigative information to the parties where such disclosure 'is deemed necessary for securing appropriate relief'". *EEOC v. Associated Dry Goods Corp.*, 449 U.S. 590, 596 (1981); *see also* 29 C.F.R. § 1601.22.  "[T]he Commission has also created special disclosure rules permitting release of information in its files to charging parties or their attorneys, aggrieved persons in whose behalf charges have been filed and the persons or organizations who have filed the charges in their behalf, and respondents and their attorneys, so long as the requet for the information is made in connection with contemplated litigation".  *Id*. at 596-97.  "Though normally a person can see information in the file only for the case in which he is directly involved, the Commission sometimes allows a prospective litigant to see information in files of cases brought by other employees against the same employer where that information is relevant and material to the litigant's case".  *Id*. at 597; *see also* EEOC COMPLIANCE MANUAL § 83.7(c).  "Before disclosing any information, however, the Commission expunges the names, identifying characteristics, and statements of any witnesses who have been promised anonymity, as well as the names of any other respondents".  *Id*.  "Moreover, any person requesting confidential information must execute a written agreement not to disclose the information to any other person, except as part of the normal course of litigation after a suit is filed".  *Id*. at 597-98.  "Congress did not include charging parties within the 'public' to whom disclosure of confidential information is illegal under the provisions of Title VII here at issue".  *Id*. at 598.  "The charge, of course, cannot be

45

concealed from the charging party...[n]or can it be concealed from the respondent, since the statute also expressly requires the Commission to serve notice of the charge upon the respondent within 10 days of its filing". *Id.*; *see also* 42 U.S.C. § 2000e-5(b). "Thus, the 'public' to whom the statute forbids disclosure of charges cannot logically include the parties to the agency proceeding...[a]nd we must infer that Congress intended the same distinction when it used the word 'public' in § 709(e), 42 U.S.C. § 2000e-8(e)". *Id.* "The two statutory provisions treat essentially the same subject, and, absent any congressional indication to the contrary, we must assume that 'public' means the same thing in the two sections". *Id.*

### 3.   Deliberative Process Privilege

Pursuant to *In the Matter of the Liquidation of Integrity Ins. Co.,* 165 N.J. at 83-85, "[t]he deliberative process privilege is a doctrine that permits the government to withhold documents that reflect advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated" if the document (1) was "generated before the adoption of an agency's policy or decision", or is "pre-decisional", and if the document (2) is "deliberative in nature, containing opinions, recommendations, or advice about agency policies" because "[p]urely factual material that does not reflect deliberative processes is not protected". *See also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975); *Kaiser Alum. & Chem. Corp. v. United States*, 157 F. Supp. 939 (1958); *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *Environmental Protection Agency v. Mink*, 410 U.S. 73, 88 (1973); *Redland Soccer Club v. Department of the Army*, 55 F.3d 827, 853-56 (3d Cir. 1995). "There is a public policy involved in this claim of privilege for this advisory opinion — the policy of open, frank discussion between subordinate and chief

concerning administrative action". *Kaiser Aluminum & Chemical Corp. v. U.S.*, 157 F. Supp. 939, 946 (Ct. Cl. 1958); *see also In re U.S.*, 321 Fed. Appx. 953, 958-59 (Fed. Cir. 2009). "The claim of privilege is raised by a formal claim made by the head of the agency after he has personally considered the material in question". *EEOC v. Peoplemark, Inc.*, 2010 U.S. Dist. LEXIS 17526, at *9 (W.D. Mich. 2010); *see also Alpha I, L.P. v. United States*, 83 Fed. Cl. 279, 289 (Fed. Cl. 2008). "He does so by submitting a declaration stating the precise reasons for reserving the confidentiality of the investigative report and identifying and describing the documents to which the privilege is asserted". *Id.*; *see also EEOC v. Cont'l Airlines, Inc.*, 395 F. Supp. 2d 738, 741 (N.D. Ill. 2005); *United States v. Reynolds*, 345 U.S. 1, 7-8 (1953).

"Once the government demonstrates that the subject materials meet those threshold requirements" and creates a "presumption against disclosure, a litigant may obtain deliberative process materials if his or her need for the materials and the need for accurate fact-finding override the government's significant interest in non-disclosure"; however, the litigant "bears the burden of showing a substantial or compelling need for [the materials]" because "[i]n all but exceptional cases it is considered against the public interest to compel the government to produce inter-agency advisory opinions". *In the Matter of the Liquidation of Integrity Ins. Co.,* 165 N.J. at 85-86; *see also Carl Zeiss Stiftung v. V.E.B. Carl Zeiss*, 40 F.R.D. 318, 324 (D.C. Cir. 1966); *Federal Trade Comm'n v. Warner Communications, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984); *E.W. Bliss Co. v. United States*, 203 F. Supp. 175, 176 (N.D. Ohio 1961); *Redland Soccer*, 55 F.3d at 853-56. "[W]hen determining whether a litigant has sustained the burden of overcoming the deliberative process privilege, factors to consider include: (1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the

extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions". *Id.*; *see also Warner*, 742 F.2d at 1161; *Redland Soccer*, 55 F.3d at 853-56.

"[M]emoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would generally be available for discovery by private parties in litigation with the Government". *Mink*, 410 U.S. at 88. "The following would be examples of material that is not protected: who the EEOC interviewed during its investigations; who conducted the investigations; the facts on which the EEOC based its cause determinations; the documents or testimony on which the EEOC based its finding of fact included in the determinations; the actions taken during the investigation by the EEOC; the communciations between the EEOC and witnesses (both from plaintiffs' side and defendant's side); and the dates on which the investigations were started and finished". *EEOC v. Peoplemark, Inc.*, 2010 U.S. Dist. LEXIS 17526, at *8-9. "This information would not be shielded by the deliberative process privilege because the privilege does not protect purely factual or objective material". *Id.*; *see also McCall v. Lockheed Martin Corp.*, 2006 U.S. Dist. LEXIS 46772 (S.D. Miss. 2006). "[W]hen the government seeks affirmative relief, it is fundamentally unfair to allow it to evade discovery of materials that a private plaintiff would have to turn over, thus allowing the government to 'play with defendant's hole card upturned and its hold card down under any claim of government or executive privilege'". *EEOC v. Citizens Bank & Trust Co.*, 117 F.R.D. 366, 366 (D. Md. 1987); *see also EEOC v. Los Alamos Constructors, Inc.*, 382 F. Supp. 1373 (D.N.M. 1974)

However, many courts have found that "factual information asserted to be deliberative

48

should be disclosed...only if it does not reveal the deliberative process and is not intertwined with the policy-making process" and that because "the division between factual and deliberative content is not exact", "merely because the content of a particular document involves factual information...does not mean that the deliberative-process privilege does not apply". *In re U.S.*, 321 Fed. Appx. at 959. Rather, "factual information that itself reveals the deliberative process and cannot be severed from the deliberative context is protected" and such a "determination requires different treatment for materials reflecting deliberative or policy-making processes on the one hand, and purely factual, investigative matters on the other". *Id*. "Courts focus less on the nature of the materials sought and more on the effect of the materials' release: the key question in such cases became whether the disclosure of materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions". *Id*. at 959-60. Thus, "whenever the unveiling of factual materials would be tantamount to the publication of the evaluation and analysis of the multitudinous facts conducted by the agency, the deliberative process privilege applies". *Id*. at 960-61; *see also National Wildlife Federation v. United States Forest Service*, 861 F.2d 1114, 1119 (9th Cir. 1988).

Notably,

> ...in some situations, *in camera* inspection will be necessary and appropriate. But it need not be automatic. An agency should be given the opportunity, by means of detailed affidavits or oral testimony, to establish to the satisfaction of the District Court that the documents sought fall clearly beyond the range of material that would be available to a private party in litigation with the agency. The burden is, of course, on the agency resisting disclosure...and if it fails to meet its burden without *in camera* inspection, the District Court may order such inspection. But the agency may

demonstrate, by surrounding circumstances, that particular documents are purely advisory and contain no separable, factual information. A representative document of those sought may be selected for *in camera* inspection. And, of course, the agency may itself disclose the factual portions of the contested documents and attempt to show, again by circumstances, that the excised portions constitute the barebones of protected matter.

*Mink*, 410 U.S. at 93.

### 4.    Work-Product Privilege

Pursuant to FED. R. CIV. P. 26(b)(3),

> (A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i)     they are otherwise discoverable under Rule 26(b)(1); and
> (ii)    the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

"The work product doctrine is governed by a uniform federal standard set forth in FED. R. CIV. P. 26(b)(3) and 'shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" *In re Cendant Corp. Securities Litig.*, 343 F.3d 658, 661-62 (3d Cir. 2003)(*quoting United States v. Nobles*, 422 U.S. 225, 238 (1975)). The Supreme Court articulated the essential nature of the doctrine in *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947): "In performing his various duties, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. ...This work is reflected, of course, in interviews, statements, memoranda,

50

correspondences, briefs, mental impressions, personal belief, and countless other tangible and intangible ways."   Importantly, "waiver of work-product protection occurs only when a disclosure enables an adversary to gain access to the information" and the "burden of establishing waiver of the work-product doctrine falls...on the party seeking to establish waiver". *Sealed Air*, 253 F.RD. at 311; *see also Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1428 (3d Cir. 1991); *Maldonado v. New Jersey*, 225 F.R.D. 120, 131-32 (D.N.J. 2004).

The work product doctrine is not an absolute bar to discovery of materials prepared in anticipation of litigation.  "Work product can be produced upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."   *In re Cendant*, 343 F.3d at 663.   Even if the party seeking discovery of information otherwise protected by the work product doctrine has made the requisite showing, "courts must still protect against the disclosure of mental impressions, conclusions, opinions, or legal theories of an attorney and his agents."   *Id.*  Thus, there are "two tiers of protection: first, work prepared in anticipation of litigation by an attorney or his agent is discoverable only upon a showing of need and hardship; second, 'core' or 'opinion' work product that encompasses the 'mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation' is 'generally afforded near absolute protection from discovery' and requires a heightened showing of extraordinary circumstances".  *Id.* at 663-64; *see also In re Ford Motor Co.*, 110 F.3d 954, 962 n.7 (3d Cir. 1997); *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985); *Schneck v. International Business Machines Corp.*, 1993 WL 765638, at *4 (D.N.J. 1993); *Times of Trenton Publ'g Corp. v. Pub. Util. Serv. Corp.*, 2005 U.S. Dist. LEXIS

34624, at *12 (D.N.J. 2005).  Indeed, the work-product doctrine "is an intensely practical one, grounded in the realities of litigation in our adversary system.  One of those realities is that attorneys must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial.  It is therefore necessary that the doctrine protect materials prepared by agents for the attorney as well as those prepared by the attorney himself".  *United Coal*, 839 F.2d at 966.

Importantly, "the party asserting work product protection bears the burden to show the doctrine applies".  *Sealed Air*, 253 F.R.D. at 306; *see also Conoco, Ins. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982).  The Third Circuit has adopted a "two part test for ascertaining whether the documents or things at issue should be protected under the work-product doctrine".  *Id.*; *see also In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 183 (D.N.J. 2003); *Muse-Freeman v. Bhatti*, 2008 WL 2165147, at *1 (D.N.J. 2008); *Paris v. R.P. Scherer Corp.*, 2006 WL 1982876, at *2 (D.N.J. 2006).  The first inquiry is "the reasonable anticipation test, which requires that the court determine whether litigation could reasonably have been anticipated...[with the] relevant inquiry [being] whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation".  *Id.*; *see also In re Gabapentin*, 214 F.R.D. at 183; *Maertin v. Armstrong World Indus.*, 172 F.R.D. 143, 148 (D.N.J. 1997); *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1258 (3d Cir. 1993); *Rockwell Int'l*, 897 F.2d at 1266.  "Although the litigation need not be imminent, there must be an identifiable specific claim of impending litigation".  *Id.*; *see also Rockwell Int'l*, 897 F.2d at 1266; *Maertin*, 172 F.R.D. at 148; *Leonen*, 135 F.R.D. at 97.  The second inquiry "is whether the documents

were prepared primarily for the purpose of litigation, ...as documents prepared for other purposes that prove useful in subsequent litigation are not attorney work-product". *Id*. at 307; *see also Paris*, 2006 WL 1982876, at *2; *In re Gabapentin*, 214 F.R.D. at 184.  "Documents created in the ordinary course of business, even if useful in subsequent litigation, are not protected by the work-product doctrine".  *Id*.; *see also Rockwell Int'l*, 897 F.2d at 1265-66.  Thus, "even where the reasonable anticipation of litigation is established, whether the document comes within the purview of the work-product doctrine still depends primarily on the reason or purpose for the document's production".  *Id*.; *In re Gabapentin*, 214 F.R.D. at 184.  "To be protected by the work-product doctrine, a document must have been created for use at trial or because a lawyer or party reasonably anticipated that specific litigation would occur and prepared the document to advance the party's interest in the successful resolution of that litigation".  *Willingham v. Ashcroft*, 228 F.R.D. 1, 6 (D.C. Cir. 2005).  "The decision that a document is protected by the work product doctrine is not a linear conclusion and is necessarily dependent on both the content of the document and the factual showing by the party seeking disclosure".  *Coregis Ins. Co. v. Law Offices of Carole F. Kafrissen, P.C.*, 57 Fed. Appx. 58, 60 (3d Cir. 2003).  The "work product doctrine does not apply when an attorney undertakes an internal investigation to comply with internal policy" but rather, "only applies where the materials in question were prepared in anticipation of litigation and not in the course of an investigation to discover the precise facts of a particular incident".  *Freedman & Gersten, LLP v. Bank of Am., N.A.*, 2010 U.S. Dist. LEXIS 130167, at *19 (D.N.J. 2010).  "[T]here is no privilege at all unless the document was initially prepared in contemplation of litigation, or in the course of preparing for trial" such that a "litigant must demonstrate that documents were created with a specific claim supported by concrete facts

which would likely lead to litigation in mind, ...not merely assembled in the ordinary course of business or for other nonlitigation purposes". *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508, 1515 (D.C. Cir. 1993).

### B.     FAPS' Motion

At issue in FAPS' Motion are EEOC's Answer to Interrogatory No. 21 (*see* Cert. 1 Bishop-Thompson at Exhs. B-C, J)[1], EEOC's Response to Document Requests Nos. 1, 7, 12, and 18 (*Id.* at Exhs. D-E, H-I)[2], and EEOC's Privilege Log Nos. 1, 7, and 12 (*Id.* at Ex. E)[3].  In

---

[1] With respect to FAPS' Interrogatory No. 21, EEOC has objected to identifying and providing a description of "all documents, statistics and demographic data that...[it] had at the time it filed the Complaint which support...[EEOC's] claim that FAPS'...policies have a disparate impact on African-American and other minority applicants or prospective applicants" (Cert. 1 Bishop-Thompson at Ex. B) on grounds that "this interrogatory...seeks documents and information which are protected from disclosure by the attorney-client privilege, the attorney work-product privilege, the common interest and the government deliberative process privilege and which are otherwise non-discoverable" (*Id.* at Ex. E).

[2] With respect to FAPS' Document Requests Nos. 1, 7, 12, and 18, EEOC produced relevant non-privileged information but objected to producing (1) "any and all written reports, statements or other documents prepared by...[EEOC] related to the alleged discriminatory hiring and recruitment practices alleged in...[the] Complaint", (7) "[a]ll documents, statistics and/or demographic data used by...EEOC to determine and analyze the relevant labor pool from 2004 to the present for African American and other minority applicants and prospective applicants", (12) "[a]ll communications, documents, or studies prepared by an expert or consultant, reviewed by or relied on by the EEOC, regardless of whether such communications will be used at trial and regardless of whether such communications, documents or studies were prepared at the direction of the EEOC, addressing the hiring and/or recruitment practices of FAPS", and (18) "all documents describing, relating or referring to the statistical analysis of FAPS' hiring and employment practices" (Cert. 1 Bishop-Thompson at Ex. D) on grounds and to the extent that these requests seek documents or information subject to the attorney-client privilege, the work-product privilege, the common interest and/or joint prosecution privilege, the government deliberative process privilege, and/or seek non-discoverable information pursuant to FED. R. CIV. P. 26(b)(4)(B) (*Id.* at Ex. E).

[3] With respect to EEOC's Privilege Log, FAPS has challenged the government deliberative process and attorney work-product privilege designations for the following items:

> 1.      RTI Labor Market Analysis & Supporting Data
>         Prepared by: RTI
>         To: EEOC Newark Area Office
>         Date: Various Dates
>         Description: Case Analysis
>         Privilege: GDP
> ...
> 7.      Intake Screening Processing Notes Form
>         Prepared by: Newark Area Office
>         To: EEOC Newark Area Office File

addition, during oral argument FAPS clarified that it is seeking the production of any/all EEO-1

Reports that were utilized by EEOC in developing the relevant labor market.[4]  *See* dkt. entry no.

60.

Having reviewed FAPS' Interrogatory No. 21 and EEOC's answer thereto, the Court

finds EEOC's answer asserting various privileges to be deficient because EEOC has failed to

provide any identification or description of the information requested and/or failed to certify

whether all relevant, responsive information withheld is identified in its Privilege Log.  EEOC is

directed to supplement its answer to Interrogatory No. 21 by identifying and describing any

relevant, responsive information or by certifying that its Privilege Log includes the identification

and description of all relevant, responsive information withheld.   Assuming EEOC has fully

answered this interrogatory by previously identifying and describing all non-privileged

information withheld on its Privilege Log (*see* Cert. 2 DiSavino at 1-5), EEOC's answer to

Interrogatory No. 21 is sufficient.  However, if EEOC has withheld any information that is not

listed on its Privilege Log (*see* Cert. 1 Bishop-Thompson at Ex. E), EEOC is directed to amend

its Privilege Log and supplement its answer accordingly.  The Court notes that the deliberative

---

<div style="margin-left:2em">

Date: Various Dates
Description: Internal Case Processing & Activity
Privilege: GDP

...
12.   Statistical Analysis: Reports, Data and Research
      Prepared by: Dana Marucci, Louis Graziano
      Various Dates
      Description: Case Analysis
      Privilege: GDP, AWP

</div>

*See* Cert. 1 Bishop-Thompson at Ex. E.

[4] With respect to FAPS's request for any/all EEO-1 Reports that were utilized by EEOC in developing the relevant labor market, EEOC has objected on grounds and to the extent that this request seeks documents or information subject to the government deliberative process privilege and/or is non-discoverable information pursuant to 42 U.S.C. § 2000e-8(e).

process privilege analysis set forth below is applicable to any information similarly withheld.

Having reviewed FAPS' Document Request Nos. 1, 7, 12, and 18 and EEOC's respective responses thereto, although the Court acknowledges that EEOC has produced some responsive information, the Court finds EEOC's responses asserting various privileges to be deficient because EEOC has failed to certify whether all relevant, responsive information withheld is identified in its Privilege Log.  EEOC is directed to supplement its answer to Document Request Nos. 1, 7, 12, and 18 by identifying and describing any relevant, responsive information or by certifying that its Privilege Log includes the identification and description of all relevant, responsive information withheld.  Assuming EEOC has fully responded to these document requests by previously identifying and describing all non-privileged information withheld on its Privilege Log (*see* Cert. 2 DiSavino at 1-5), EEOC's responses to Document Request Nos. 1, 7, 12, and 18 are sufficient.  However, if EEOC has withheld any information that is not listed on its Privilege Log (*see* Cert. 1 Bishop-Thompson at Ex. E), EEOC is directed to amend its Privilege Log and supplement its responses accordingly.  The Court notes that the deliberative process privilege analysis set forth below is applicable to any information similarly withheld.

To the extent EEOC has objected to Document Request Nos. 12 and 18 pursuant to FED. R. CIV. P. 26(b)(4)(B), the Court notes that a Scheduling Order related to expert discovery was recently entered (*see* dkt. entry no. 68) and finds EEOC's objection appropriate given that "drafts of any [expert] report or [expert] disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded", are protected under Rules 26(b)(3)(A) and (B).  FED. R. CIV. P. 26(b)(4)(B).  Pursuant to the Scheduling Order, EEOC is directed to supplement its responses to these document requests with appropriate expert disclosures and reports by **<u>October 30, 2012</u>**.

With respect to EEOC's assertion of the deliberative process privilege, having reviewed EEOC's Privilege Log Nos. 1, 7, and 12 and FAPS' request for production of any/all EEO-1 Reports that were utilized by EEOC in developing the relevant labor market together with the Cert. of EEOC Chair Jacqueline A. Berrien ("Berrien") (*see* dkt. entry no. 58-2 at 1-3) and Cert. of DiSavino (see Cert. 2 DiSavino at 1-5), the Court finds that EEOC has sustained it burden of demonstrating that these materials are both "pre-decisional" and "deliberative in nature". *In the Matter of the Liquidation of Integrity Ins. Co.*, 165 N.J. at 83-85; *see also Redland Soccer*, 55 F.3d at 853-56. EEOC Chair Berrien has certified that the information and documents requested "constitute information selected and reviewed, and analyses conducted, by EEOC in-house statistical experts and by investigative staff in EEOC's Newark Area Office...for purposes of determining whether to propose that an EEOC Commissioner file charges against particular employers" and that "disclosure to individuals outside the...[EEOC] would inhibit the free expression of opnions by...[EEOC] employees, thereby impairing the...[EEOC's] ability to enforce the statutes within its authority". *See* Cert. of Berrien at 1-3. The Court finds that EEOC Chair Berrien's claim of "the government deliberative process privilege for the information and analyses requested" (*Id*.) satisfies the requirement that such privilege be "raised by a formal claim...by the head of the agency after [s]he has personally considered the material in question" and "submitting a declaration stating the precise reasons for reserving the confidentiality of the investigative report and identifying and describing the documents to which the privilege is asserted" (*EEOC v. Peoplemark*, 2010 U.S. Dist. LEXIS 17526, at *9). Further, EEOC has represented that the documents withheld "are the data, analyses, and reports requested, reviewed, and prepared by EEOC's in-house statistician, and the statistical analyses and notes prepared by

EEOC enforcement and legal personnel" and that "[t]hese documents were gathered, reviewed, and analyzed by EEOC personnel as part of EEOC's process of deciding whether to file a Commissioner's Charge". *See* Cert. 2 DiSavino at 1-5.  Based on the above and EEOC's statement that "[t]he discovery at issue...relates to documents gathered, produced, and analyzed by EEOC personnel as part of the...[EEOC's] decision regarding whether to file a Commissioner's Charge against any number of employers operating in Port Newark" (Cert. 2 DiSavino at 1-5), the Court finds that EEOC has "demonstrate[d] that the subject materials meet...[the] threshold requirements" for the deliberative process privilege" creating a "presumption against disclosure" (*In the Matter of the Liquidation of Integrity Ins. Co.*, 165 N.J. at 85-86; *see also Redland Soccer*, 55 F.3d at 853-56) given that the Commissioner's Charge against FAPS was filed on October 18, 2007 and the Complaint in this matter was filed on June 17, 2010 (*see* Cert. 2 DiSavino at 1-5).

Although the Court acknowledges FAPS' contention that "all documents referring to or relating to statistical data regarding the relevant labor market" are discoverable based upon its interpretation of *EEOC v. Fina Oil and Chemical Co.*, 145 F.R.D. 74 (E.D. Tex. 1992) and *EEOC v. Peoplemark*, 2010 U.S. Dist. LEXIS 17526 (W.D. Mich. 2010) (FAPS' Br. at 7-8), the Court finds both cases distinguishable.  With respect to *Fina Oil*, the Court finds this case distinguishable given that a majority of EEOC's deliberative process privilege claims in that case were upheld and only the disclosure of certain information for which there was no indication that EEOC claimed was "pre-decisional, deliberative or prepared by EEOC's in-house statistical or consulting expert" was compelled.  *See* EEOC's Opp'n Br. at 7-8.  Similarly, the Court finds *Peoplemark* distinguishable given that EEOC's deliberative process privilege claims over "the

58

labor market and statistical analysis" were upheld and only the disclosure of certain information

for which there was no indication that EEOC "definitively asserted the...deliberative [process]

privilege" was compelled.  *See* EEOC's Opp'n Br. at 7-8.

Further, the Court acknowledges FAPS' contention that it has no knowledge of the data

or the demographic area used by EEOC to determine the relevant labor market and/or to compile

statistical analyses or reports and that, due to the expense and burden related to collecting its own

data to evaluate various labor market scenarios, FAPS has no way to obtain this information from

any other source and will be at a disadvantage when analyzing and preparing an adequate defense

without production of the discovery requested.  *See* FAPS' Br. at 8-10.  The Court notes that in

response to FAPS' discovery requests, EEOC "produced the non-privileged, responsive portions

of the investigative file...including notes from EEOC Enforcement personnel's interviews with

FAPS...representatives and employees, unsuccessful job applicants, personnel from the

Waterfront Commission of New York Harbor[,] and notes from [its] on-site visit to FAPS' Port

Newark facility".  *See* Cert. 2 DiSavino at 4; *see also EEOC v. Peoplemark*, 2010 U.S. Dist.

LEXIS 17526, at *8-9.  The Court further notes that despite FAPS' contentions to the contrary,

EEOC "is not compelled to use, rely upon, or otherwise present the materials or analysis

prepared in 2006 when it was deciding whether to recommend the filing of a Commissioner's

Charge" and has represented that its "testifying expert will prepare his own statistical analysis

using different data than was used in 2006".  *See* EEOC's Opp'n Br. at 8-10.

Given that "[i]n all but exceptional cases it is considered against the public interest to

compel the government to produce inter-agency advisory opinions" (*In the Matter of the

Liquidation of Integrity Ins. Co.*, 165 N.J. at 85-86; *see also Redland Soccer*, 55 F.3d at 853-56),

the Court finds that FAPS has failed to sustain its burden of overcoming the deliberative process privilege (*In the Matter of the Liquidation of Integrity Ins. Co.*, 165 N.J. at 85-86; *see also Warner*, 742 F.2d at 1161; *Redland Soccer*, 55 F.3d at 853-56). At best, the relevance of the discovery at issue is questionable based upon EEOC's representations and the fact that "the material was gathered at a different time for a different purpose" (*i.e.*, development and issuance of a Commissioner's Charge). *See* EEOC's Opp'n Br. at 8-10; *see also In the Matter of the Liquidation of Integrity Ins. Co.*, 165 N.J. at 85-86; *see also Warner*, 742 F.2d at 1161; *Redland Soccer*, 55 F.3d at 853-56. Despite the related expense and burden, FAPS is free to conduct its own investigation, obtain and develop its own data, and retain its own expert to analyze that data such that any factual information in EEOC's possession is not unavailable to FAPS. *See* EEOC's Opp'n Br. at 10-11; *see also In the Matter of the Liquidation of Integrity Ins. Co.*, 165 N.J. at 85-86; *see also Warner*, 742 F.2d at 1161; *Redland Soccer*, 55 F.3d at 853-56. Finally, the Court finds that EEOC's role in the investigation leading up to, and after, the filing of the Commissioner's Charge (*see* Cert. 2 DiSavino at 1-5) and role in this litigation (*Id.*) weigh against disclosure of the materials over which EEOC claims privilege because same may "hinder frank and independent discussion regarding contemplated policies and decisions" (*In the Matter of the Liquidation of Integrity Ins. Co.*, 165 N.J. at 85-86; *see also Warner*, 742 F.2d at 1161; *Redland Soccer*, 55 F.3d at 853-56; EEOC's Opp'n Br. at 3-7). In fact, production of the discovery at issue may "raise more questions than it answers" as EEOC would "be compelled to provide the rationale for its choices...or face the misleading and/or incorrect inferences that [FAPS] would invariably seek to raise from unexplained data"; "the parties, the witnesses, the Court, and eventually...a jury...[might] become entangled in a side-show about how and why

60

EEOC personnel conducted its deliberative process throughout 2006 when deciding whether and against whom to file a Commissioner's Charge". *See* EEOC's Opp'n Br. at 5, 9-10. While factual data may be included within the discovery at issue, the Court notes that EEOC's use of "an in-house statistical expert before commencing an investigation...does nothing to alter the parties' respective burdens in this litigation" such that FAPS will "have full access to any and all data that EEOC intends to rely on to prove its case" through "the usual course of litigation" and expert discovery. *See* EEOC's Opp'n Br. at 10. Here, given that the requested discovery "consist[s] of materials that were assembled at the request of, and then reviewed and analyzed by, EEOC's in-house statistical expert" and were used by EEOC "before [it] filed a Commissioner's Charge against FAPS...and before [it] commenced its investigation against FAPS" (EEOC's Opp'n Br. at 2), the Court finds that excising and disclosing any "factual information asserted to be deliberative" by EEOC would "reveal the deliberative process" because the factual information "is...intertwined with...[EEOC's] policy-making process" and because "the division between factual and deliberative content is not exact" (*In re U.S.*, 321 Fed. Appx. at 959-60). Here, the Court finds that "unveiling of...[the] factual materials...[at issue] would be tantamount to the publication of the evaluation and analysis of the multitudinous facts conducted by...[EEOC]". *Id.*; *see also National Wildlife*, 861 F.2d at 1119. Under these circumstances, and for the same reasons set forth above, the Court finds an *in camera* review of the requested discovery inappropriate. *See Mink*, 410 U.S. at 93.

With respect to EEOC's assertion of the work product privilege over Privilege Log No. 12, the Court finds it unnecessary to reach this claim of privilege given that EEOC's assertion of the deliberative process privilege over this item has been sustained as set forth above.

C.      **EEOC's Motion**

Initially, although the Court acknowledges EEOC's contention that a determination of the proper temporal scope of discovery in this litigation is unrelated to the scope of EEOC's administrative investigation and that EEOC is not bound by the parameters of inquiry undertaken during the investigation (*see* EEOC's Br. at 8-9) given that the Complaint includes alleged conduct occurring "[s]ince at least 2004 to the present" (EEOC's Compl., dkt. entry no. 1 at 3), FAPS has stated that it is "not...attacking the sufficiency of...[EEOC's] investigation" and is not "requesting that the Court review the substance of the investigation" but, rather, only submits that its discovery responses in this matter incorporating and referring to documents produced to EEOC during the investigation are appropriate (FAPS' Opp'n Br. at 12-13).  Based upon FAPS' representations that it "produced all documents in its possession that cover the...period from January 1, 2003 to the present during both the investigation and litigation stage" of this matter (FAPS' Opp'n Br. at 6; *see also* Decl. of Julie Lynch ("Lynch"), dkt. entry no. 57-1 at 1-3), that it "has provided all information and documents in its possession regarding recruitment and hiring from 2003 to the present" and "no other documents could be located" (*Id*. at 12-13; *see also* Decl. of Lynch at 1-3), and that it will supplement its production with any additional documents that are located (*Id*.; *see also* Decl. of Lynch at 1-3), the Court notes that production of the same materials would be "unreasonably cumulative or duplicative" (FED. R. CIV. P. 26(b)(2)(C)(i)) and Court finds that FAPS has produced discovery "related to the recruitment and hiring of individuals" for the period January 1, 2003 to the present such that the only issue remaining from the Motion is EEOC's request for discovery from January 1, 2000 to December 31, 2002 (*see* EEOC's Br. at 2 n.2).  However, as set forth below, the Court finds that the discovery period is

appropriately circumscribed to the period from January 1, 2003 to the present.  Although FAPS has provided the Decl. of Lynch certifying that a diligent search for all documents related to the recruitment and hiring of individuals from January 1, 2002 to the present was conducted (*see* Decl. of Lynch at 1-3), that "applications, interview notes or other documents related to recruitment and hiring of individuals prior to January 1, 2002" were not located (*Id.*), and that "hiring data for the period of January 1, 2003 to the present" was located and produced (*Id.*), to the extent it has not already done so, FAPS is directed to produce any/all non-privileged information responsive to EEOC's discovery requests for the period January 1, 2003 to the present, or, in the event no other responsive materials exist, provide a certification attesting to same, by **May 18, 2012**.

With respect to the period from January 1, 2000 to December 31, 2002, although the Court acknowledges that the a broad vista for permissible discovery "holds especially true in Title VII cases" and that "courts have been cautioned not to impose unnecessary limitations on discovery" (*Harris*, 2007 U.S. Dist. LEXIS 5412, at *5-6), "[t]he party seeking discovery has the burden of showing that the information sought is relevant to the subject matter of the action and may lead to admissible evidence" (*Caver*, 192 F.R.D. at 159; *see also Nestle Foods*, 135 F.R.D. at 105).  Despite the fact that some courts have found that the EEOC is empowered to obtain relief for all class members harmed by a discriminatory policy irrespective of the date the harm occurred (*see, e.g., EEOC v. Shell Oil Co.*, 466 U.S. at 69), and despite the fact that some courts have set limits on discovery running into the past ranging from three (3) to twelve (12) years based on burdensomeness (*see, e.g., Milner*, 73 F.R.D. at 632), in this instance EEOC has failed to sustain its burden of demonstrating that information from the period sought is relevant and

may lead to admissible evidence and the Court finds that the discovery period is appropriately circumscribed to the period from January 1, 2003 to the present.  Even assuming EEOC had met its burden such that the Court was persuaded that discovery from January 1, 2000 to December 31, 2002 satisfies the requirements of FED. R. CIV. P. 26(b)(1) (*see also* Pearson, 211 F.3d at 65), based upon FAPS' Decl. of Lynch certifying that a diligent search for information and documentation regarding recruitment and hiring for the period January 1, 2000 to December 31, 2002 was conducted (*see* Decl. of Lynch at 1-3), that any responsive information was produced (*Id.*), that "applications or...[other] documentation regarding recruitment and hiring...[from] 2000 through 2002" was not located (Decl. of Lynch at 1-3; *see also* FAPS' Opp'n Br. at 9, 13), and that FAPS will produce additional documents in the event they are located (Decl. of Lynch at 3), the Court finds that FAPS has conducted a diligent search and sufficiently explained its objections by demonstrating that it is not in possession of relevant information for the period January 1, 2000 to December 31, 2002 and that additional efforts would be unduly burdensome (*see Tele-Radio*, 92 F.R.D. at 375; *Guiterrez*, 2002 U.S. Dist. LEXIS 15418, at *22-23; *Takacs*, 2009 WL 3048471, at *1).

## IV.    CONCLUSION AND ORDER

The Court having considered the papers submitted and the opposition thereto, as well as the oral argument of counsel, for the reasons stated on the record and set forth above;

**IT IS** on this 10th day of May, 2012,

**ORDERED** that FAPS' Motion to compel EEOC to produce the statistical data responsive to FAPS' discovery requests, or in the alternative, for an *in camera* review [dkt. entry. no. 54] is **DENIED** as set forth above; and it is further

**ORDERED** that EEOC's Motion to compel FAPS to provide discovery for the period from January 1, 2000 to December 31, 2003 [dkt. entry. no. 55] is **DENIED** in part as set forth above.

s/ *Douglas E. Arpert*
**DOUGLAS E. ARPERT**
**UNITED STATES MAGISTRATE JUDGE**